867 P.2d 407

STATE of New Mexico,
Plaintiff–Appellee,

v.

Jerry VERNON, Defendant–Appellant.

No. 20027.

Supreme Court of New Mexico.

Nov. 16, 1993.

Rehearing Denied Dec. 16, 1993.

Annette Reese Quintana, Las Vegas, NV,
Paul J. Kennedy, Albuquerque, for appellant.

Tom Udall, Atty. Gen., Joel K. Jacobson,
Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

RANSOM, Chief Justice.

Jerry Vernon appeals his convictions for first-degree murder (deliberate) under NMSA 1978, Section 30–2–1(A)(1) (Repl. Pamp.1984) and for kidnapping resulting in great bodily harm under NMSA 1978, Section 30–4–1 (Repl.Pamp.1984). He also appeals the enhancement of his sentence due to the use of a gun in the course of kidnapping under NMSA 1978, Section 31–18–16 (Repl. Pamp.1990). This Court has jurisdiction of the appeal under Article VI, Section 2 of the New Mexico Constitution and SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992).

On appeal, Vernon challenges the sufficiency of the evidence to support his convictions, argues that the jury was not properly instructed, challenges several evidentiary rulings by the trial court, and argues that he had ineffective assistance of counsel. We address only the sufficiency of the evidence question in this opinion; the other issues are addressed in an unpublished decision issued concurrently with this opinion. We affirm the conviction for murder and reverse the conviction for kidnapping. Because of our disposition of the kidnapping conviction, we need not address the enhancement of sentence question.

*Sufficiency of the evidence issues.—Standard of review.* In examining a challenge to the sufficiency of the evidence, this Court is to "view the evidence in a light most favorable to the jury's verdict; all reasonable, permissible inferences are indulged to support of the verdict." *State v. Litteral,* 110 N.M. 138, 143, 793 P.2d 268, 273 (1990). "This [C]ourt does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. The fact finder may reject defendant's version of the incident." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (citation omitted). The following is a recitation of the evidence in accordance with this standard of review.

*—Facts.* Jerry Vernon was convicted for the murder and kidnapping of Larry Stevens. Vernon and Stevens had been acquainted for some time prior to Stevens's death. Just prior to Stevens's death, Stevens had occasionally stayed at Vernon's home. Sharman Sategna Stanley, a witness in this case, was staying with Vernon at the time of Stevens's death. A few days before Stevens was killed, Vernon accused Stevens of stealing and told him to leave and never return to his house. On the day of the murder, Vernon and Stanley were returning home when they saw Stevens come out of the house and leave in his van. It was, Vernon believed, the third day in a row that Stevens had been at Vernon's house after having been told not to return.

Vernon and Stanley followed Stevens to a 7–11 convenience store. Vernon claims that he wanted to talk to Stevens about the missing items and to convince Stevens to stop "pestering" him. When Vernon located Stevens, the two men talked and argued loudly in the parking lot while Stanley stayed in Vernon's vehicle. The men then walked around to the passenger side of Vernon's car, and Vernon, in a loud voice, ordered Stevens to get in. Stanley testified that Vernon shoved Stevens into the back seat. Following Vernon's directions, Stanley drove away while the two men talked and argued. There is some evidence that Stevens was handcuffed in the back seat. While in the car, Vernon held a beer that Stevens had been drinking and at times would reach over the seat and give Stevens a drink of it. The State also introduced prior statements in which Stanley consistently averred that Stevens was handcuffed in the back seat.

Vernon directed Stanley to drive to a remote street in the northeast part of Albuquerque. Stanley testified that Vernon yelled at her to find a key to some handcuffs before the two men got out of the car. Stanley walked around to the passenger side of the car, where she saw Stevens with his hands up in the air in what may be inferred as the universal posture of a prisoner. The two men were arguing; Vernon was holding a shotgun and a kubotan stick. He apparently had taken the latter from Stevens.[1]

---

1. Stevens habitually carried a kubotan, which, according to the parties, was similar to a police

Vernon told Stanley to turn away, and she went to the back of the car. The two men walked to the front of the car with Stevens leading and Vernon carrying the shotgun. A few moments later Stanley heard two shots. Vernon came back to the car, stating, "It was either him or me," and the two left the scene.

The body of the victim was found on June 21, 1989, having suffered two shotgun wounds to the head. Forensic evidence indicated that the first shot was fired with the muzzle of the shotgun pressed against Stevens's upper lip, causing death instantaneously. The second shot was fired into Stevens's right temple from a distance of less than twelve inches while Stevens's head was lying on the ground.

■ —*Murder.* Vernon was convicted of willful and deliberate murder. The statute defines this type of first-degree murder as a killing without lawful justification or excuse caused "by any kind of willful, deliberate and premeditated killing." Section 30–2–1(A)(1). The jury was instructed that it could find Vernon guilty of willful and deliberate murder if it found that the killing was with the deliberate intention to take away the life of Stevens. Deliberate intention was defined with reference to Vernon's state of mind:

> The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

*See* SCRA 1986, 14–201 (jury instruction for willful and deliberate murder).

Vernon presented a theory of self-defense. He claimed that Stevens first attacked him with the kubotan, and then the two of them ran to the gun and struggled over it. Vernon testified that he wanted to shoot Stevens and that pulling the trigger "might" have been deliberate. While Stanley did not see the shooting, as described earlier, her version of the events contradict Vernon's self-defense claim. The testimony regarding handcuffs is sufficient to support a finding that Stevens was confined against his will in the back seat of the car. In addition, there is sufficient evidence to show that Vernon held Stevens at gunpoint when the two men exited the car. Even if Stevens did attack Vernon at this point, Stevens would have been acting in self-defense. Because he created the danger, Vernon cannot claim that he too was acting in self-defense. *See State v. Chavez,* 99 N.M. 609, 611, 661 P.2d 887, 889 (1983) ("defendant who provokes an encounter . . . cannot avail himself of the claim that he was acting in self-defense"). Viewed in the light most favorable to the verdict, Stanley's testimony is sufficient to support the conviction for first-degree murder.

—*Kidnapping.* Kidnapping in New Mexico, as applicable to this case, is an "unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim . . . be held to service against the victim's will." Section 30–4–1(A)(3). Accepting that Vernon formed the intent to kill Stevens either before or shortly after the two men got into Vernon's car and that Stevens was confined by handcuffs in the back seat, we are left with the question of whether there is sufficient evidence to support a finding that Stevens was "held to service against his will." We find that Stevens was not held to service. At most, Stevens may have been the victim of false imprisonment, which is defined as "intentionally confining or restraining another person without [the victim's] consent and with knowledge that he has no lawful authority to do so." Section 30–4–3. The jury was given an instruction on false imprisonment as a lesser included offense of kidnapping.[2]

---

nightstick and was capable of being wielded as a dangerous weapon.

2. Neither party has requested this Court to exercise inherent authority to order entry of judgment on the lesser included offense of false imprisonment on the grounds that the record supports a conclusion that the lesser included offense necessarily has been proven by the conviction for the greater offense. *See Dickenson v. Israel,* 482 F.Supp. 1223, 1225–26 (E.D.Wis.

We have held that the phrase "held to service against the victim's will" contains no words that are unusual or difficult to define or understand. *State v. Aguirre*, 84 N.M. 376, 381, 503 P.2d 1154, 1159 (1972). Still, the phrase seems to raise difficult questions in case after case. We explained in *State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991), that "held to service" occurs when one "is made to submit his or her will to the direction and control of another ... 'for the purpose of assisting or benefitting someone or something.'" *Id.* at 570, 817 P.2d at 1212 (quoting *Webster's Third New International Dictionary* 2075 (1961)). In addition, the phrase should be "construed to effectuate the same overall scheme as ... holding for ransom and as a hostage—namely, to accomplish some goal that the perpetrator may view as beneficial to himself or herself."[3] *Id.* We quoted dictionary definitions of "service" to the effect that service consists of an act, action, conduct or performance, duty, or labor. *Id.*

We held in *State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990), that a victim was held for service because the evidence supported the inference that the defendant, at the moment of the abduction, had intent to commit criminal sexual penetration at a later time. "Once defendant restrained the victim with the requisite intent to hold her for service against her will, he had committed the crime of kidnapping, although the kidnapping continued throughout the course of defendant's other crimes and until the time of the victim's death." *Id.* In *Ortega*, we affirmed a conviction for kidnapping because the defendant deceived two victims into assisting him in carrying out his objective— robbery. One of the victims drove a friend of hers (the other victim), the defendant, and his friend in the victim's car to a remote area where the defendant intended, at the least, to rob the victims and steal their car. 112 N.M. at 570–71, 817 P.2d at 1212–13. We affirmed the kidnapping convictions as to both victims, accepting that both victims were induced by deception into accompanying the defendant and his accomplice to a remote area as part of an overall plan. We stated that "both [victims] were deceived into assisting them in carrying out their objective." *Id.* at 571, 817 P.2d at 1213.

■ In recent years, our sister states have wrestled with the question of what constitutes holding for service under their kidnapping statutes. Based on an historical analysis of its statute and the common meanings of the words, an Oklahoma court recently held that the phrase "hold to service" encompasses an "involuntary servitude" element. *Perry v. State*, 853 P.2d 198, 202 (Okla.Crim. App.1993). "Inherent in said element are any acts or services, or the forbearance of same, done at the command of the perpetrator, through force, inveiglement or coercion, *for the benefit of the perpetrator.*" *Id.* (emphasis added). The Supreme Court of Vermont also concluded that "[t]he hold to service element ... requires that the victim be forced, compelled or coerced to engage in an act, or to forego engaging in an act, *which act or forbearance inures to the benefit of the perpetrator of the crime.*" *State v. McLaren*, 135 Vt. 291, 376 A.2d 34, 38 (1977) (emphasis added); *see also State v. Barr*, 126 Vt. 112, 223 A.2d 462 (1966) (victim held for service when defendant forced her to make several phone calls on his behalf and forced her to knock on a door of a store so that defendant could gain entry). Based on this, we reaffirm our holding in *Ortega* that the "hold to service" element of kidnapping requires that the victim be held against his or her will to perform some act, or to forego performance of some act, for the benefit of someone or something.

■ The State argues that under either of two scenarios Vernon could have been found guilty of holding Stevens for service. The first scenario is based on Vernon's testimony that he thought Stevens had stolen and damaged items in his house and had done other

---

1980), *aff'd*, 644 F.2d 308, 309 (7th Cir.1981) (cited in *State v. Garcia*, 114 N.M. 269, 276, 837 P.2d 862, 869 (1992)). We do not address that issue.

3. We suggested in *Ortega* that the uniform jury instruction be revised to provide an explanation of the phrase. *See id.* at 570, 817 P.2d at 1212. That has not been done, however, and the jury in this case was given no explanation of the phrase.

irritating things. Vernon testified that he wanted to learn why Stevens was doing those things and to be assured that he would no longer pester Vernon. The State's theory is that Stevens performed a service by discussing the problem with Vernon. This scenario would require us to accept that two men discussing their problems constitutes the type of service that would support a kidnapping conviction. While Vernon may have perceived it beneficial to discuss or resolve problems, that is a rather benign service to support the penalty assessed for kidnapping. There was no other act or service done by Stevens for the purpose of assisting or benefitting Vernon and thus no kidnapping. *See Ortega*, 112 N.M. at 570, 817 P.2d at 1212; *Perry*, 853 P.2d at 202 (service encompasses an element of involuntary servitude).

 The second scenario offered by the State is that Vernon restrained and confined Stevens for the purpose of eventually killing him. The evidence does support a finding that Vernon intended to kill Stevens from the time that they both got into the car and started driving around. The transportation, under this theory, was for the purpose of removing Stevens to a more remote location where there would be no witnesses to the killing other than Stanley. We agree, however, with the holding of the Washington Supreme Court in *State v. Green*, 94 Wash.2d 216, 616 P.2d 628 (1980) (en banc), that "the mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping." *Id*. 616 P.2d at 635. In this case, Vernon took Stevens to a more remote location to facilitate the murder. Vernon may well have thought that killing Stevens would be to his benefit and that it would be better to kill him in a location where there would be fewer witnesses than at the 7-11. Still, whatever benefit Vernon saw in taking Stevens to a remote location, the movement was merely incidental to the murder. Unlike cases involving criminal sexual penetration or robbery, no "service" is performed by the victim of a shooting with intent to kill because the victim does not confer any independent assistance or benefit to the perpetrator of the crime.

██ If we accept the State's construction of the kidnapping statute, then we effectively would allow any murder when there is incidental movement of the victim to be punishable as first-degree murder, even without proof of premeditation or perpetration of a felony. *See* § 30-2-1(A)(2) (felony-murder statute). In essence, we would allow the State to convict a defendant of kidnapping simply by proving that the defendant committed a murder and that the defendant moved the victim. The legislature, however, did not intend that this scenario be construed as kidnapping, as evidenced by the specific enumeration of elements in our kidnapping statute. *See* § 30-4-1. In addition, we agree with Justice Levin's dissent in *People v. Wesley*, 421 Mich. 375, 365 N.W.2d 692, 710 (1984) (Levin, J., dissenting), that "[s]ubjecting a second-degree murderer who incidentally moves the victim to punishment for first-degree murder aggravates the degree of the offense where there is no additional culpability and, hence, no need to provide a disincentive to commission of an aggravated offense." Here, for example, if the jury had found that Vernon had taken Stevens against his will to resolve their problems (which constitutes kidnapping under the State's first scenario), and further found that Vernon's culpability was only that he knew that his acts created a strong probability of death or great bodily harm (which generally constitutes only second-degree murder), Vernon could have been convicted of felony murder. *See* § 30-2-1(A)(2). We do not believe the legislature intended such a result. Therefore, we must reject the State's contention that incidental movement in the course of a murder constitutes kidnapping.

Our decision in this case conforms with our decision in *State v. Pierce*, 109 N.M. 596, 788 P.2d 352 (1990), *modified on other grounds*, *State v. Ortega*, 112 N.M. 554, 563, 817 N.M. 1196, 1205 (1991). In *Pierce*, we upheld the kidnapping conviction of a defendant who took a victim to a remote location against her will and stole the victim's unborn child by performing a crude cesarean section. The victim was "held for service" because the purpose of the detention was to confer a benefit upon the defendant—namely, to ob-

tain a baby. *Id.* at 601, 788 P.2d at 357. In addition, the victim's death did not confer any assistance or benefit to the defendant. Thus, the murder could not be used as a basis for the kidnapping charge. *See id.* ("The kidnapping and the murder were separate acts.").

*Conclusion.* The rest of the issues raised by Vernon on this appeal are addressed in an unpublished decision we file separately and in which we affirm the trial court on all points. We reverse the conviction for kidnapping and affirm the guilty verdict on the charge of first-degree murder. We remand this case to the district court for entry of acquittal on the kidnapping and gun-enhancement convictions and resentencing.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.