**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JERRY ALVIN KERSEY,

  Petitioner - Appellant,

  v.

RONALD LYTLE, Warden, Southern
New Mexico Correctional Facility;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

  Respondents - Appellees.

No. 99-2007
(D. Ct. No. 97-694-BB)
(D. N. Mex.)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Chief Judge, **TACHA**, and **BRISCOE**, Circuit Judges.

Petitioner Jerry Alvin Kersey appeals from the district court's dismissal of

his petition for habeas corpus relief. We exercise jurisdiction pursuant to 28

U.S.C. §§ 1291 and 2253, and affirm.

**I.**

In 1991, Michael Clark, Kersey's half-brother, met Tracy Jarvis, a Roswell

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

High School student. Jarvis was engaged to Steven Farley, another Roswell High School student. Jarvis and Clark became friends, but Jarvis made it clear to Clark that she did not want to pursue a romantic relationship with him. Clark eventually became obsessed with her. Consequently, Jarvis ended their friendship and asked Clark to leave her alone. Clark then began to harass both Jarvis and Farley.

On September 26, 1991, Clark picked up Kersey in Albuquerque, and they drove to Roswell in Clark's car. After dropping Kersey off at a hotel, Clark purchased an ice pick, pliers, and two steak knives. The next morning, Kersey purchased a pair of handcuffs and a security guard badge. At approximately 10:30 a.m., Kersey drove to Roswell High School in Clark's car and, posing as a police detective, informed school officials that he needed to question Farley. Kersey then walked out of the high school with Farley, frisked him, handcuffed him, and put him in the back seat of Clark's car.

That afternoon, Clark turned himself in to the police and eventually led them to Farley's body. Farley had been stabbed eleven times with an ice pick and strangled with an electrical cord.

Kersey also turned himself into the police. He told the police that Clark asked him to help beat up Farley because Farley had raped one of Clark's friends. Kersey admitted that he purchased handcuffs and a badge and that he posed as a

policeman to convince Farley to get into Clark's car. He further admitted that after he took Farley from the school, he picked up Clark and Clark drove them to the abandoned Cedar Lake Lounge. Kersey stated that he used starter fluid as an ether to quiet Farley during the ride.

Kersey told the police that once they arrived at the lounge, Farley and Clark went inside while he stood guard outside. Kersey stated that when he heard Farley scream, he ran inside and told Clark to stop fighting with Farley. According to Kersey, Clark stabbed Farley several times with the ice pick and then asked Kersey to hand him a piece of electrical cord. Kersey said he thought Clark was going to use the cord to tie up Farley. Instead, Kersey watched Clark tie the cord around Farley's neck and twist it. Kersey then walked out of the building. When Clark came outside, Kersey drove them to a phone and called Farley's mother to demand a $50,000 ransom for her son.

Kersey claimed that he believed Clark was going to beat up Farley and then let him go, but never thought Clark intended to kill Farley. Kersey also stated that Clark suggested they make the ransom call and supplied the phone number. Finally, Kersey said that the phone call was only supposed to divert attention, and that he and Clark never intended to collect the ransom.

Clark entered a guilty plea, and Kersey proceeded to trial in New Mexico state court. At trial, Kersey testified on his own behalf and confirmed his

statement to the police. He stressed that he never expected Clark to kill Farley and that he himself never intended to kill Farley or participate in killing him. Evidence at trial showed that both the stabbing and the strangulation occurred while Farley was still alive, and either could have caused his death.

The jury convicted Kersey of first degree murder, kidnapping, conspiracy, and tampering with evidence. The court ordered Kersey to serve consecutive sentences of life in prison (for murder) and eighteen years (for kidnapping). The New Mexico Supreme Court affirmed Kersey's convictions and sentences and denied his petition for rehearing. State v. Kersey, 903 P.2d 828, 828-29 (N.M. 1995). Kersey then sought habeas corpus relief in state court. The state trial court denied his petition on the merits, and the New Mexico Supreme Court denied his petition for a writ of certiorari.

On June 9, 1997, Kersey filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. Respondent Ronald Lytle answered, conceding that Kersey had fully exhausted his claims in state court. The federal district court dismissed Kersey's petition with prejudice and granted Kersey a certificate of appealability.

**II.**

As he did in state court and in the district court, Kersey asserts the following grounds for habeas relief on appeal: (1) there was insufficient evidence to support his kidnapping conviction; (2) there was insufficient evidence to

support his first degree murder conviction based on felony murder or deliberate intent murder; (3) even if the evidence was sufficient to sustain his kidnapping conviction, the sentencing court's imposition of consecutive sentences for his kidnapping and murder convictions violated his constitutional right against double jeopardy; and (4) the trial court denied him his Sixth Amendment right to an impartial jury when it excused for cause two jury venire members even though they stated that they could judge the case impartially.

Kersey filed his federal habeas petition after April 24, 1996. We therefore apply the Antiterrorism and Effective Death Penalty Act (AEDPA), 29 U.S.C. § 2254, to his claims. Braun v. Ward, 190 F.3d 1181, 1184 (10th Cir. 1999). Because the New Mexico state court adjudicated Kersey's claims on the merits, Kersey is entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). We presume that the state court's factual findings are correct unless Kersey can rebut this presumption by clear and convincing evidence. Id. § 2254(e)(1).

## III.

Kersey first contends that the state offered insufficient evidence to support his kidnapping and first degree murder convictions and thereby violated his due process rights. The appropriate standard of review for sufficiency of evidence claims is "whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the [petitioner guilty] beyond a reasonable doubt.'" Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The Tenth Circuit has not yet decided whether sufficiency of evidence claims brought under AEDPA should be treated as issues of law or fact. See id. at 1176-77. If we treat a sufficiency of evidence claim as a legal question, we ask whether the state court's rejection of this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). On the other hand, if we treat the claim as a factual question, then we ask whether the state court's ruling represents an unreasonable determination of the facts in light of the evidence. Id. § 2254(d)(2). Because Kersey's sufficiency of evidence claims lack merit under either analysis, however, we need not decide which approach is appropriate.

**A.**

Under New Mexico law, kidnapping is defined as "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or

deception, with intent (1) that the victim be held for ransom . . . [or] (3) that the victim be held to service against the victim's will." N.M. Stat. Ann. § 30-4-1.A(1), (3) (Michie Supp. 1999). Kersey argues that the state did not present sufficient evidence to show that he intended to hold Farley to service against Farley's will or to hold Farley for ransom. We disagree.

The "held to service" element "requires that the victim be held against his or her will to perform some act, or to forego performance of some act, for the benefit of someone or something." State v. Vernon, 867 P.2d 407, 410 (N.M. 1993). If a defendant holds a victim merely to discuss a problem or simply to move the victim during the course of a homicide, the victim is not held to service. Id. at 411. However, if a defendant induces a victim, by deception, to accompany him as part of an overall plan, and the victim's presence benefits someone or something, then the victim is held to service. State v. Ortega, 817 P.2d 1196, 1212-13 (N.M. 1991).

Here, Kersey purchased handcuffs and a security guard badge and posed as a police detective to lure Farley from school. Kersey testified that he took Farley to help Clark beat him up. Kersey further testified that he used starter fluid to quiet Farley during the ride to the Cedar Lake Lounge. The evidence at trial also showed that Clark wanted to kidnap Farley to convince him to end his relationship with Jarvis. This evidence was sufficient to support a rational jury's

determination that Kersey held Farley to service when he deceived Farley into accompanying him as part of an overall plan to benefit Clark.

Similarly, the evidence was sufficient to support a rational jury's finding that Kersey kidnapped Farley with the intention of holding him for ransom. A victim is "held for ransom" when he is held "to accomplish some goal that the perpetrator may view as beneficial to himself." Id. at 1212. Kersey admitted that he called Farley's mother and demanded $50,000. In addition, evidence at trial showed that Kersey was in financial trouble at the time of the kidnapping. Although Kersey testified that he made the ransom call to divert suspicion and that he and Clark never intended to collect the ransom, a rational jury could disbelieve his testimony.

Because a rational jury could have found that Kersey kidnapped Farley either for service or for ransom, Kersey's due process rights have not been violated. We therefore affirm his kidnapping conviction.

**B.**

Kersey next argues that the state offered insufficient evidence for the jury to convict him of either felony murder or deliberate intent murder. In New Mexico, felony murder is "the killing of one human being . . . without lawful justification or excuse . . . in the commission of or attempt to commit any felony." N.M. Stat. Ann. § 30-2-1.A(2) (1994). The state must prove "that the defendant

caused (or aided and abetted) the killing" and "that the defendant intended to kill (or was knowingly heedless that death might result from his conduct)." Ortega, 817 P.2d at 1205. The intent element is satisfied if the defendant has knowledge that his "acts create a strong probability of death or great bodily harm to the victim." Id. (internal quotation marks and citation omitted). Kersey claims that the evidence did not show beyond a reasonable doubt that he knew Clark intended to kill Farley or knew that his participation in Clark's plan might result in death or great bodily harm. Again, we disagree.

Kersey testified that he used starter fluid to subdue Farley on the ride to the Cedar Lake Lounge and that he initially stood guard outside the lounge. He further testified that he saw Clark stab Farley, watched Clark tie the cord around Farley's neck and twist it, and then walked out of the building. Kersey maintained that he never intended to kill Farley or participate in killing him, and that he never thought Clark intended to kill Farley. However, a rational jury could disbelieve Kersey's testimony. Thus, we conclude that the evidence was sufficient to support a rational jury's determination that Kersey committed felony murder.

Kersey insists that the state's evidence also was insufficient to support a deliberate intent murder conviction under N.M. Stat. Ann. § 30-2-1.A(1) (1994). A deliberate murder is one that is "arrived at or determined upon as a result of

careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time." State v. Garcia, 837 P.2d 862, 864 (N.M. 1992) (internal quotation marks and citation omitted).

A rational jury could have found that Kersey made a careful, calculated decision to kill Farley or assist Clark in killing Farley when Kersey (1) used starter fluid to silence Farley, (2) stood guard outside the Cedar Lake Lounge, or (3) watched Clark stab Farley and tie a piece of cord around his neck. Again, the jury was entitled to disbelieve Kersey's claim that he never intended to kill Farley or participate in Farley's murder. Thus, we affirm Kersey's first degree murder conviction based on either felony murder or deliberate intent murder.

**IV.**

Kersey's third claim is that the trial court violated his Fifth Amendment right against double jeopardy. Specifically, Kersey argues that it was unconstitutional for the trial court to sentence him consecutively for felony murder and the underlying felony of kidnapping. We may grant Kersey's habeas petition on this legal ground only if the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

The Double Jeopardy Clause prohibits multiple punishments for the same

offense. U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."); United States v. Dixon, 509 U.S. 688, 695-96 (1993). In New Mexico, multiple punishments are unconstitutional if (1) "the conduct underlying the offenses is unitary" and (2) the legislature did not intend "to create separately punishable offenses." Swafford v. State, 810 P.2d 1223, 1233 (N.M. 1991) (applying U.S. Supreme Court precedent). However, the Double Jeopardy Clause does not prohibit separate punishments for "discrete acts violative of the same statute." Id. Thus, if the conduct at issue is non-unitary (or consists of discrete acts), then there is no need to ascertain whether the legislature intended to create separately punishable offenses. Id. Conduct is non-unitary if "events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)" or if "the quality and nature of the acts or . . . the objects and results involved" are distinguishable. Id. at 1233-34.

Kersey's conduct was not unitary. Kersey kidnapped Farley from Roswell High School at approximately 10:30 a.m. The kidnapping was complete as soon as Kersey removed Farley from the school with the intent to hold Farley for service or ransom. Kersey and Clark then drove Farley nearly sixty miles from the school and murdered him almost two hours after the abduction. Thus, the kidnapping was sufficiently separated in time and space from the murder to

- 11 -

establish two distinct crimes. See Ortega, 817 P.2d at 1213 (finding that conduct underlying kidnapping and murder convictions was not unitary where the kidnapping was complete long before the victim was attacked). But see State v. Contreras, 903 P.2d 228, 232 (N.M. 1995) (finding that the defendant's conduct was unitary where he stole a cab and its contents almost immediately after stabbing the victim).

We hold that the state court's imposition of consecutive sentences for Kersey's kidnapping and felony murder convictions is not contrary to, or an unreasonable application of, Supreme Court precedent. We therefore affirm the district court's denial of relief on double jeopardy grounds.

## V.

Finally, Kersey asserts that the state trial court denied him his Sixth Amendment right to an impartial jury. During jury selection, one jury venire member stated that she had (1) relatives on the jury, (2) a relative who had been a murder victim, and (3) another relative who had been convicted of murder. A second venire member admitted that he had been arrested for assault with a deadly weapon. Even though both venire members stated that they could decide the case impartially, the trial court excused them for cause. Kersey argues that, as a result, the jury was biased.

In deciding whether the jury was impartial, we must focus on the jurors

who ultimately decided Kersey's fate.  See Ross v. Oklahoma, 487 U.S. 81, 86 (1988); see also United States v. Lacey, 86 F.3d 956, 969 (10th Cir. 1996) ("[T]he partiality of the petit jury is evaluated in light of those persons ultimately empaneled and sworn, not those who are excused from service.").  Kersey has not presented any evidence to show that the jury empaneled in his case was partial or biased.  Thus, we conclude that the trial court's decision to remove two jury venire members for cause was not contrary to and did not involve an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  We therefore affirm the district court's denial of relief on Sixth Amendment grounds.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge