This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v. **No. A-1-CA-36685**

**RAFAEL ANTHONY CERVANTES,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Following a jury trial, Defendant Rafael Anthony Cervantes was convicted of several crimes arising from a domestic dispute, including first-degree kidnapping, child abuse, aggravated assault with a deadly weapon, criminal damage to property, and false imprisonment. He appeals his kidnapping conviction, contending that the evidence was legally and factually insufficient. We affirm.

**BACKGROUND**

**{2}**     The events leading to the kidnapping charge unfolded on December 27, 2015, when Defendant, in a rage, wielded a knife at household members and guests in his home. Defendant, then eighteen, was living with mother, his two young brothers, his teenage sister, his girlfriend, Nicole, then seventeen, and the couple's baby. Defendant came home from work drunk and went to bed. Nicole, upset that Defendant was not helping with the laundry and the baby, woke him up. The two argued, partly over text messages on Nicole's phone. Angry, he took her phone from her and at some point threw it to the other side of the house. Following the argument, Defendant's mother told him to respect Nicole and "grow up." He grew angrier and took a large knife from the kitchen. Reacting to the ongoing pressure he felt to be "the man of the house" and feeling unappreciated by his family, Defendant lashed out in a prolonged rage. In the course of the episode, his mother was cut in the arm with the knife. Defendant demanded that the older members of the household and others who were visiting do as he say. He repeatedly threatened to kill all of them and told them that they could not leave. He took away most of their cell phones to prevent them from calling anybody. Defendant also hit Nicole, hit his sister, held the knife to Nicole's neck, and committed other aggressive acts.

**{3}**     Toward the end of the incident, Defendant told Nicole to pack for the baby so the three could leave. Once she had done that, he grabbed Nicole by the arm and they left the house. Defendant's fit of anger continued outside, where he committed more acts of violence and aggression. Eventually the police arrived and subdued him.

**{4}**     The State later charged Defendant with the various crimes, including kidnapping Nicole, which is the only crime at issue in this appeal.

**DISCUSSION**

**{5}**     Defendant raises two issues, both of which concern elements necessary to sustain his kidnapping conviction. Defendant first contends that there was insufficient evidence for the conviction because preventing a person from calling the police does not constitute being held to service under the kidnapping statute. He next contends that there was insufficient evidence at trial to prove that he restrained or confined Nicole. We address his arguments in turn.

**I.     The Kidnapping Conviction Is Legally Sufficient**

**{6}**     Kidnapping in relevant part is "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with[, among other alternative forms of intent,] intent . . . that the victim be held to service against the victim's will[.]" NMSA 1978, § 30-4-1(A) (2003). The State's theory for satisfying the "held to service" element of the kidnapping statute was that Defendant held Nicole to service by keeping her from calling the police to prevent his arrest. Defendant asserts that keeping a victim from contacting the police is legally insufficient to satisfy the element. Defendant's assertion requires us to construe the meaning of "held to service." We review such a

question of statutory interpretation de novo. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

**{7}** A person "held to service" is one who "is made to submit his or her will to the direction and control of another for the purpose of assisting or benefitting someone or something." *State v. Vernon*, 1993-NMSC-070, ¶ 11, 116 N.M. 737, 867 P.2d 407, (omission, internal quotation marks, and citation omitted), *superseded by statute as stated in State v. Baca*, 1995-NMSC-045, ¶ 41, 120 N.M. 383, 902 P.2d 65. "[T]he phrase should be construed to effectuate the same overall scheme as holding for ransom and as a hostage—namely, to accomplish some goal that the perpetrator may view as beneficial to himself or herself." *Id.* (omission, internal quotation marks, and citation omitted). A victim can be considered held to service in these circumstances when either performing—or foregoing the performance of—some act. *See id.* ¶ 13.

**{8}** Our courts have applied these principles to hold that certain factual scenarios do not meet the definition of "held to service." For instance, *Vernon* rejected the state's alternative theories that the element was satisfied (1) when "two men discuss[] their problems"—that is, when the defendant in the case wanted to learn why the victim was doing "irritating" things and wanted assurance that the victim would stop pestering him; and (2) when a victim is removed to a place where there would be fewer witnesses to the victim's murder.[1] *Vernon*, 1993-NMSC-070, ¶¶ 14-15. Concerning the first theory, the Court reasoned that discussing or resolving problems "is a rather benign service to support the penalty assessed for kidnapping[,]" and rejected the state's theory of "held to service." *Id.* ¶ 14. In rejecting the state's second theory, the Court commented that "no 'service' is performed by the victim of a shooting with intent to kill because the victim does not confer any independent assistance or benefit to the perpetrator of the crime." *Id.* ¶ 15.

**{9}** Our Supreme Court extended *Vernon* to a case involving murder and attempted murder in *Baca*.[2] The Court compared *Vernon*'s "moving a victim to a remote location so that there are no witnesses" to *Baca*'s facts: removing two victims from a house, putting them in a car, driving them to a ranch road, and running them over at that location to reduce evidence of the crime. *Baca*, 1995-NMSC-045, ¶¶ 6, 42. Applying *Vernon*'s analysis, our Supreme Court concluded that the victims were not "held for service" because the requisite independent assistance or benefit to the defendant was lacking. *Id.* ¶ 42.

**{10}** Against the backdrop of cases interpreting "held to service," Defendant argues that his actions toward Nicole were similar to the actions of the *Vernon* and *Baca* defendants. Those defendants transported their victims to eliminate evidence of their

---

1 The Legislature in effect superseded *Vernon* by supplementing the kidnapping statute. The new, fourth prong provides in relevant part that kidnapping can consist of the transportation of a victim by force, intimidation, or deception with intent to inflict death, physical injury, or a sexual offense on the victim. *See* § 30-4-1(A)(4).
2 *Baca* was decided shortly after the Legislature amended the kidnapping statute. *See* Part I, paragraph 8 n.1, *supra*. The events giving rise to *Baca* occurred when the previous version of the statute was in effect.

crimes—much like, Defendant argues, he allegedly "confined or transported Nicole to (temporarily) disable her as a witness[.]"

**{11}** We disagree that *Vernon* and *Baca* sufficiently resemble this case insofar as the held-to-service consideration is concerned. We note that the defendants in both *Vernon* and *Baca* were each charged with a crime against the victim in addition to the kidnapping of the victim. Here, in contrast, kidnapping was the only crime against Nicole that Defendant was ultimately charged with. This difference matters because it is not plain movement, restraint, or confinement that fails the "held to service" test, but rather the "incidental movement in the course of a murder" that fails. *Vernon*, 1993-NMSC-070, ¶ 16; *accord Baca*, 1995-NMSC-045, ¶ 42 ("In both [*Vernon* and *Baca*] the incidental movement of the victim is for the purpose of facilitating the murder[.]") The *Vernon* court was reluctant to deem movement incidental to a murder "service"—and, hence, kidnapping—because doing so would effectively escalate second-degree murder to first-degree murder without a corresponding additional measure of culpability. 1993-NMSC-070, ¶ 16.

**{12}** Here, the restraint or confinement of Nicole was not incidental to another crime against her. Rather, it stands apart from any other crime, its corresponding culpability intact. Moreover, the evidence concealed by preventing Nicole from calling the police was not evidence of a crime about to be committed, as in *Vernon* and *Baca*, but rather was evidence of crimes Defendant was in the course of committing. By not calling the police for help and, in the process, revealing Defendant's ongoing criminal acts, Nicole provided independent assistance—an appreciable benefit—to Defendant. This service does not register as the equivalent of, for example, discussing or resolving problems, the first theory rejected in *Vernon*, nor as the equivalent of incidental movement for the purpose of facilitating murder, the second theory rejected in *Vernon* and the theory rejected in *Baca*. To the contrary, had the service been fully carried out by all involved in the incident, the police would not have been alerted, and Defendant would have been spared multiple convictions and his resulting prison sentence. Defendant himself apparently recognized this benefit: he testified that he took the cell phones of most of those present, including Nicole, so as not to involve the police.

**{13}** We conclude that keeping a victim from calling the police is sufficient to satisfy the "held to service" element of the kidnapping statute. Defendant's kidnapping conviction is thus legally sufficient.

## II. The Kidnapping Conviction Is Factually Sufficient

**{14}** Defendant next challenges the sufficiency of the evidence supporting his kidnapping conviction. He does not argue that there was insufficient evidence that he sought to prevent Nicole from calling the police. Rather, he contends that the State failed to put forth evidence at trial sufficient to prove beyond a reasonable doubt that Defendant "restrained" or "confined" Nicole against her will. Defendant provides scant support for his assertion—simply that "Nicole testified that she left the house voluntarily with [Defendant], indeed that it was her idea that they leave."

**{15}** The State argues in response that Defendant's contention presumes that the kidnapping began when Defendant and Nicole, with the baby, fled the house. The State points out that the kidnapping could have begun before then—that is, when Defendant took Nicole's cell phone, prevented her from leaving, and threatened her with the knife. On this point, we agree with the State that the jury could have understood the kidnapping to begin before the three left the house. The State goes on to highlight evidence both that Defendant committed those acts and also that Nicole left involuntarily.

**{16}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). On our review, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Lastly, we measure the sufficiency of the evidence against the jury instructions given, which become the law of the case. *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674.

**{17}** As a preliminary matter, we note that Defendant misstates the law of this case pertaining to the restraint-confinement element of kidnapping by arguing that the State failed to prove that Nicole was restrained or confined against her will. In actuality, the jury was instructed that, to find Defendant guilty of kidnapping, it had to find that Defendant "restrained or confined Nicole . . . by force or intimidation by threaten[ing] her with a knife[.]" That portion of the jury instruction did not include the phrase "against her will." Consequently, we will not review this aspect of Defendant's challenge for evidence that the alleged restraint or confinement was against Nicole's will.

**{18}** Turning now to our review, we note that testimony elicited at trial supports the jury's finding that Defendant restrained or confined Nicole during the course of the incident. Defendant admitted that he held his family members at knifepoint so they would not leave. He admitted to holding the knife to Nicole's neck forcefully enough to leave a bruise. Defendant's sister testified that he said he would not let anyone leave the house. His aunt and cousin confirmed the testimony that no one was allowed to leave, and his cousin further testified that people in the room were scared. More specifically, Defendant's mother testified that Defendant would not let Nicole leave the house. Lastly, Nicole testified that Defendant held the group in the living room at knifepoint, telling them they could not leave, and that he told everyone repeatedly that he was going to kill them. This testimony—even if contradicted by other testimony, *see id.*—is relevant direct and indirect evidence from which a reasonable jury could conclude that Defendant restrained or confined Nicole through his threatening acts and

statements. We conclude, therefore, that Defendant's kidnapping conviction is supported by sufficient evidence.

**CONCLUSION**

**{19}** We affirm.

**{20} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JAMES J. WECHSLER, Judge Pro Tempore**