**Certiorari Denied, November 1, 2012, No. 33,822**
**Certiorari Granted, November 2, 2012, No. 33,837**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2012-NMCA-112**

**Filing Date: August 27, 2012**

**Docket No. 30,563**

**STATE OF NEW MEXICO,**

　　　**Plaintiff-Appellee,**

**v.**

**ANDREW TRUJILLO,**

　　　**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Matthew G. Reynolds, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline Cooper, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**　　Defendant Andrew Trujillo appeals his convictions for aggravated burglary, aggravated battery, conspiracy to commit aggravated burglary, conspiracy to commit aggravated battery, and kidnapping.  Defendant argues that the Legislature did not intend to punish as kidnapping restraint or movement that is merely incidental to another crime.  We

agree and reverse the kidnapping conviction. We also hold that the convictions for conspiracy to commit aggravated burglary and conspiracy to commit aggravated battery violate double jeopardy and, therefore, remand to the district court to vacate the lesser conspiracy. We affirm all other convictions.

## I.     BACKGROUND

**{2}**     Around 2:30 a.m. on November 6, 2008, Defendant and another man broke into the home of Juaquin Lujan (Victim). The two men were armed with metal bars or wooden bats and were wearing motorcycle clothing and helmets. Victim and his wife awoke to the sight of the two men holding flashlights. Defendant began striking Victim with a metal bar.

**{3}**     Despite being outnumbered and unarmed, Victim fought back and was able to gain the upper hand. Victim was on top of Defendant, hitting him, when Defendant restrained Victim and called out to the other assailant for help. The other assailant began striking Victim, allowing Defendant to get free and continue striking Victim. Both men continued to beat Victim for some time before eventually leaving. The entire episode lasted approximately two to four minutes.

**{4}**     Defendant was convicted of aggravated burglary, conspiracy to commit aggravated burglary, aggravated battery, conspiracy to commit aggravated battery, kidnapping, and false imprisonment. He was acquitted of child abuse, interference with communications, and criminal damage to property.

## II.     DISCUSSION

**{5}**     Defendant challenges his kidnapping conviction by arguing in the alternative that the kidnapping statute simply does not encompass his conduct, or that there is insufficient evidence to support the conviction, or that the conviction violated double jeopardy. In addition, Defendant argues that (1) his convictions for both conspiracy to commit aggravated burglary and conspiracy to commit aggravated battery constitute double jeopardy, (2) he received ineffective assistance of counsel, (3) the court erred by excluding evidence related to the back door of Victim's home, (4) the court erred by forbidding questioning about Victim's alleged use or sale of drugs, (5) the court erred in denying his motion to disqualify the prosecutor and the Seventh Judicial District Attorney's Office, and (6) cumulative error deprived him of his right to a fair trial. We address these arguments in the order they were presented.

### A.     Kidnapping

**{6}**     Defendant argues that "[t]he Legislature did not intend to punish restraint incidental to an aggravated battery as kidnapping." He argues further that the evidence supporting his kidnapping conviction is insufficient because "it failed to establish a restraint beyond that incidental to the aggravated battery." In the factual context of this case, the arguments constitute two sides of the same coin. That is, we conclude that the restraint described by the testimony—a momentary grab in the middle of a fight—is as a matter of law insufficient

2

to support a conviction for kidnapping. Put another way, we hold that the kidnapping statute as a matter of law does not encompass the conduct described, even when the facts are viewed in the light most favorable to the conviction.

**{7}** Whether the Legislature intended restraint during an aggravated battery to be charged as kidnapping is a question of statutory interpretation. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of statute," *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801, except when doing so "render[s] the statute's application absurd, unreasonable, or unjust." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (internal quotation marks and citation omitted). "Interpretation of a statute is an issue of law, not a question of fact[,]" which we review de novo. *Id.*

**{8}** In this case, applying the plain language would be "absurd, unreasonable, or unjust." *Id.* (internal quotation marks and citation omitted). Based on our review of the history and purpose of our statute and similar statutes nationwide, as well as case law in this and other jurisdictions, we conclude that the Legislature could not have intended to increase Defendant's punishment three- or six-fold (from three to nine or eighteen years) for conduct that was merely incidental to another crime.

**1.  New Mexico Cases**

**{9}** We begin by examining the case law cited by the parties because they argue that it is controlling. Defendant cites *State v. Vernon*, 116 N.M. 737, 741, 867 P.2d 407, 411 (1993), *State v. Crain*, 1997-NMCA-101, ¶ 21, 124 N.M. 84, 946 P.2d 1095, and *State v. Pisio*, 119 N.M. 252, 261-62, 889 P.2d 860, 869-70 (Ct. App. 1994), inter alia, for the proposition that "New Mexico cases have recognized that the force involved in [a] kidnapping charge should be more than incidental to and/or 'separate and distinct' from the acts constituting another charged offense." The State appears to agree and cites *State v. McGuire*, 110 N.M. 304, 308, 795 P.2d 996, 1000 (1990), and *State v. Corneau*, 109 N.M. 81, 86, 781 P.2d 1159, 1164 (Ct. App. 1989), inter alia, as evidence that "New Mexico courts have long held that a conviction of kidnapping or false imprisonment requires proof of force or restraint beyond that inherent in any other crime, such as rape or robbery, of which the defendant is also convicted."

**{10}** Although we agree with both parties in essence, we disagree that the cases cited control our decision on the question here. This is because these cases address the issue from perspectives specific to the statutes at issue. For example, *Crain*, *Pisio*, *McGuire*, and *Corneau* all dealt with the criminal sexual penetration (CSP) statute and double jeopardy rights implicated in that statute. Similarly, the *Vernon* holding is limited in application to the "held for service" element of the kidnapping statute, which is not a factor here. Because these cases are distinguishable both on their facts and on their analyses, we decline to rely on them. A brief review of these cases reveals why they are not controlling here.

**{11}** The first set of cases pertains to convictions for kidnapping and CSP. The relevant

3

portions of the CSP statute state:

>   E.    Criminal sexual penetration in the second degree [CSP II] consists of all criminal sexual penetration perpetrated:
>
> >   (1)    by the use of force or coercion on a child thirteen to eighteen years of age;
> >
> >   (2)    on an inmate confined in a correctional facility or jail when the perpetrator is in a position of authority over the inmate;
> >
> >   (3)    by the use of force or coercion that results in personal injury to the victim;
> >
> >   (4)    by the use of force or coercion when the perpetrator is aided or abetted by one or more persons;
> >
> >   (5)    *in the commission of any other felony*; or
> >
> >   (6)    when the perpetrator is armed with a deadly weapon.
>
>   . . . .
>
>   F.    Criminal sexual penetration in the third degree [CSP III] consists of all criminal sexual penetration perpetrated through the use of force or coercion not otherwise specified in this section.

NMSA 1978, § 30-9-11(E), (F) (2009) (emphasis added). Thus, if the elements of kidnapping are met, CSP III (a third degree felony) may be elevated to CSP II (a second degree felony) through Section 30-9-11(E)(5) (the "in the commission of any other felony" element). The inquiry in these cases revolved around whether the force inherent in any CSP could form the basis for a false imprisonment or kidnapping charge, which then, in turn, could be used to support a CSP II charge. The appellate courts have held consistently that the evidence of force used in kidnapping must be independent of the evidence of force used in CSP.

**{12}** For example, in *Corneau*, the Court considered this issue vis á vis false imprisonment. The Court considered whether the defendant could be convicted of CSP II based on a predicate felony of false imprisonment when the same force or coercion "necessary to establish CSP III constitutes the restraint necessary to prove false imprisonment" and establishment of false imprisonment was used to elevate the charge to CSP II. 109 N.M. at 85, 781 P.2d at 1163. The facts of that case were as follows: the defendant offered to give the victim a ride home from a club. *Id.* at 84, 781 P.2d at 1162. Instead, he drove to his home and went inside, while the victim waited in the car. *Id.* at 84-85, 781 P.2d at 1162-63. After fifteen minutes, the victim went inside to use the bathroom, and the defendant began drinking beer and making sexual advances. *Id.* at 85, 781 P.2d at 1163. When the victim asked whether he was going to take her home, the defendant replied,

4

"You're not going anywhere" and raped her after dragging her from the living room into the bedroom. *Id.* at 85, 86, 781 P.2d at 1163, 1164. Afterward, he prevented her from leaving both by locking the door and "verbal restraint." *Id.* at 86, 781 P.2d at 1164. The defendant argued that "since the same proof of force is required to establish CSP III as to establish false imprisonment, to permit false imprisonment to elevate the act to CSP II effectively nullifies the crime of CSP III." *Id.* at 85, 781 P.2d at 1163. The Court agreed that "[o]rdinarily, almost any act of CSP will involve a restraint or confinement that would constitute false imprisonment." *Id.* at 86, 781 P.2d at 1164. The Court concluded, however, that the facts supported a finding of false imprisonment *both before and after* the CSP based on the fact that the defendant told the victim "[she wasn't] going anywhere" and dragged her to the bedroom, then, following the rape, prevented her from leaving. *Id.* at 85, 87, 781 P.2d at 1163, 1165. The restraint before the CSP thus served as the predicate felony elevating CSP III to CSP II, and the restraint after as the basis for a separate false imprisonment charge. *Id.* at 86-87, 781 P.2d at 1164-65. The following year, our Supreme Court followed *Corneau*'s approach under similar facts in *McGuire*, 110 N.M. at 308-09, 795 P.2d at 1000-01, and concluded that there was no double jeopardy violation when there were *independent factual bases* for the kidnapping and CSP convictions.

**{13}** In *Pisio*, the defendant was convicted of CSP II (felony) and kidnapping, among other charges. 119 N.M. at 255, 889 P.2d at 863. In that case, the defendant invited the victim into his apartment and she accepted. *Id.* After locking the door, they struggled and he dragged her down the hall, where he raped her. *Id.* at 256, 889 P.2d at 864. He next told her to dress, but after she had done so, prevented her from leaving and raped her again. *Id.* The defendant argued that the district court erred in denying him an instruction on CSP III as a lesser-included offense. *Id.* at 258-59, 889 P.2d at 866-67. The defendant was entitled to the instruction if there was a reasonable view of the facts by which CSP III was the highest offense the defendant could have committed. *Id.* at 259-60, 889 P.2d at 867-68. The Court extended the *Corneau* holding to kidnapping stating, "unless there is force or coercion beyond that inherent in almost every CSP, the proper charge is CSP III." *Pisio*, 119 N.M. at 259, 889 P.2d at 867.

**{14}** The Court then explained that "[t]he key to the restraint element in kidnapping is the point at which [the v]ictim's physical association with [the d]efendant was no longer voluntary." *Id.* at 260, 889 P.2d at 868. Since in *Pisio* that point occurred *prior to the CSP*, the Court concluded that the defendant's contention that no kidnapping had occurred and that CSP III was the greatest possible charge was "not a reasonable view of the evidence." *Id.* The *Pisio* Court went on to reverse the kidnapping charge on double jeopardy grounds. *Id.* at 262, 889 P.2d at 870. In doing so, it reasoned that the conduct underlying the CSP II and the kidnapping was unitary. *Id.* The lesser-included analysis focused on whether a reasonable jury could have concluded that there was insufficient force or deception to support the predicate offense of kidnapping. *Id.* at 260, 889 P.2d at 868. In contrast, the double jeopardy analysis focused on whether, once it is established that a kidnapping occurred, the Legislature intended to punish *both* CSP aggravated by a predicate felony *and* the predicate felony as separate charges. *Id.* at 262, 889 P.2d at 870. The Court concluded that it did not and vacated the kidnapping conviction, but affirmed the CSP II conviction (based on kidnapping as a predicate offense). *Id.*

**{15}** In *Crain*, the Court considered convictions for CSP II (personal injury), CSP II (felony), and kidnapping. 1997-NMCA-101, ¶ 7. The defendant and victim went together to the defendant's car after dancing in a nightclub. *Id.* ¶ 2. After talking and kissing in the car, they had intercourse. *Id.* At trial, the parties disputed whether the encounter was consensual, and the defendant was convicted. *Id.* ¶ 4. On appeal, the defendant argued that the two CSP convictions and kidnapping conviction violated double jeopardy because they "stem[med] from the same act of sexual intercourse and involve[d] the use of force or physical violence as a common element." *Id.* ¶ 17. The Court "conclude[d] that the [L]egislature has not manifested a clear intent that [the d]efendant's single act of sexual intercourse with the victim could provide the basis for convicting him of both CSP II (personal injury) and CSP II (commission of a felony)." *Id.* ¶ 20. It then vacated the convictions for CSP II (felony) and kidnapping, based on insufficient evidence of kidnapping because there was no evidence of force or deception. *Id.* ¶¶ 22, 36. The Court referred to *Corneau* and stated,

> We . . . hold here that, just as CSP III cannot be charged as CSP II without some force or restraint occurring either before or after the sexual penetration without consent, so too kidnapping cannot be charged out of every CSP III without some force, restraint, or deception occurring *either before or after* the sexual penetration.

*Crain*, 1997-NMCA-101, ¶ 21 (emphasis added).

**{16}** These cases share a quality that distinguishes them from our case: there, the Court necessarily had to consider whether there was a separate, predicate felony in order to determine whether a charge of CSP II dependent on that felony was appropriate. Because the charges of CSP II depended on a finding that the CSP was committed in "the commission of a felony," this question implicates a double jeopardy analysis. Consequently, these cases are not dispositive of the issue here because a double jeopardy analysis is different from analysis of whether the conduct itself is a crime under the statute.

**{17}** In addition to these CSP cases, several cases address the interplay between kidnapping and murder where the defendant argues that there is insufficient evidence of kidnapping when the force used was that necessary to accomplish murder. These cases fall into three general categories: (1) those that challenge the "held for service" element of the kidnapping statute, (2) those that challenge the sufficiency of the evidence, and (3) those that challenge kidnapping convictions on double jeopardy grounds. Some of these cases address both sufficiency of the evidence and double jeopardy.

**{18}** An example of the first category is found in *Vernon*, where the defendant was convicted of first degree murder and kidnapping resulting in great bodily harm. 116 N.M. at 738, 867 P.2d at 408. His conviction was based on the pre-1995 kidnapping statute, and the applicable mens rea requirement at that time was the intent to hold the victim for service. *Id.* at 739, 867 P.2d at 409. The Court reversed the conviction on the basis that there was no "service" to which the victim was held because "[t]here was no . . . act or service done by [the victim] for the purpose of assisting or benefitting [the defendant] and thus no kidnapping." *Id.* at 741, 867 P.2d at 411. The Court stated further that "the mere incidental

6

restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping." *Id.* (internal quotation marks and citation omitted). This theory "would allow the [prosecution] to convict a defendant of kidnapping simply by proving that the defendant committed a murder and that the defendant moved the victim." *Id.* The Court held that "[t]he [L]egislature . . . did not intend that this scenario be construed as kidnapping, as evidenced by the specific enumeration of elements in our kidnapping statute." *Id.* The opinion closed with explicit rejection of "the [prosecution's] contention that incidental movement in the course of a murder constitutes kidnapping." *Id.*

{19} Although the *Vernon* holding has been followed in subsequent murder cases, those opinions have been careful to recognize that the kidnapping statute was amended two years after *Vernon* to add a fourth intent requirement: "to inflict death, physical injury or a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (1995) (amended 2003); *see State v. Rojo*, 1999-NMSC-001, ¶ 27 n.1, 126 N.M. 438, 971 P.2d 829 (stating that "[s]ince [the d]efendant was charged and convicted under the statute and jury instructions in effect prior to these amendments, we do not consider whether the evidence would support a conviction under the new definition of kidnapping"); *State v. Baca*, 120 N.M. 383, 393, 902 P.2d 65, 75 (1995) (acknowledging that the *Vernon* holding applied to the "[held] for service" element of the pre-1995 statute and also analyzing the issue under that element). *Vernon*'s holding thus is tied to the specific element of kidnapping at issue there and does not address instances, like this case, in which Defendant is charged with "intent . . . to inflict death, physical injury[,] or a sexual offense on the victim." Section 30-4-1(A)(4).

{20} The Court in *State v. Saiz*, 2008-NMSC-048, ¶¶ 27-34, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783, addressed sufficiency of the evidence in the context of the defendant's double jeopardy arguments. The defendant claimed that his conviction for both kidnapping and murder violated his right not to be prosecuted twice for the same conduct. *See id.* ¶ 27. Recognizing that "[t]he essence of [the d]efendant's argument is that the acts constituting the kidnapping were not sufficiently distinct from the acts constituting the murder for two separate crimes to have been committed[,]" the Court stated that "[t]his requires an examination of the trial record to determine whether the evidence shows that [the d]efendant committed the acts constituting the crime of kidnapping, in addition to committing separate acts constituting first[]degree murder." *Id.* ¶ 30. Citing *McGuire*, 110 N.M. at 309, 795 P.2d at 1001, and *State v. Jacobs*, 2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127, the Court held that "there was substantial evidence supporting the jury's finding of two separate crimes of kidnapping and murder." *Saiz*, 2008-NMSC-048, ¶ 34. Thus, the *Saiz* Court's inquiry was whether there was sufficient evidence of "independent factual bases" for two different crimes. *Id.* ¶ 30 (internal quotation marks and citation omitted). Concluding that there was, the Court found no unitary conduct under the *Swafford* double jeopardy analysis. *Saiz*, 2008-NMSC-048, ¶ 35; *Swafford v. State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991) (stating that the test for violation of double jeopardy has two parts: first, determination of "whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes[, and, if so, determination of] whether the [L]egislature intended to create separately punishable offenses" through two different statutes addressing the same unitary conduct).

7

**{21}** *Jacobs* involved an analysis of whether there was sufficient evidence supporting a kidnapping conviction. The defendant offered the victim a ride home from the mall with her friends. 2000-NMSC-026, ¶ 5. After dropping off her friends, the defendant drove off with the victim; she was discovered later that day semi-naked and dead from a gunshot wound to the head. *Id.* ¶¶ 4-5. The defendant argued "that there was insufficient evidence to support his conviction for kidnapping, [and] that there was no evidence of an intentional abduction separate from that necessarily involved in the attempted [CSP] and murder." *Id.* ¶ 21. The Court rejected his argument, stating that "[a] rational jury could . . . have found that the kidnapping, attempted [CSP], and the murder were separate acts constituting separate crimes. [The Court] conclude[d] that there was sufficient evidence of an independent factual basis for each guilty verdict on the charges of kidnapping, attempted [CSP], and murder." *Id.* ¶ 26. The conviction was affirmed. *Id.* ¶ 73.

**{22}** None of these cases addresses the fundamental question of whether the restraint or movement falls within the kidnapping statute at all. Their analyses *presume* that the conduct falls within the kidnapping statute and proceed to assess the evidence or whether the Legislature intended to punish the same conduct under two statutes. In the factual context of this case, the more appropriate analysis involves the preliminary question: Did the Legislature intend to punish Defendant's momentary restraint of Victim in the course of a fight as kidnapping?

## 2. The History of Kidnapping Statutes

**{23}** We turn to the statute itself and the context in which it developed. Early in this century, lawmakers responded to "[a] wave of kidnappings, often by well-organized gangs . . . culminating in the notorious kidnapping of the young child of national hero Charles Lindbergh" by enacting statutes that were broadly worded and carried high penalties. 3 Wayne R. LaFave, *Substantive Criminal Law* § 18.1(a), at 4, 5 (2d ed. 2003) ("[By 1962], it could fairly be said that a great many kidnapping statutes combined severe sanctions with extraordinarily broad coverage, to the effect that relatively trivial restraints carried authorized sanctions of death or life imprisonment." (internal quotation marks omitted)). Indeed, in 1969, this Court construed the kidnapping statute extremely broadly: "If there is an unlawful restraining or confining, the length of time involved in such restraint or confinement is immaterial. If there is an unlawful taking, the distance the victim is taken is not material." *State v. Clark (Clark I)*, 80 N.M. 91, 94, 451 P.2d 995, 998 (Ct. App. 1969) (citations omitted), *rev'd on other grounds by* 80 N.M. 340, 455 P.2d 844 (1969) *(Clark II)*. This broad wording has resulted in "a crime that has eluded meaningful definition." John L. Diamond, *Kidnapping: A Modern Definition*, 13 Am. J. Crim. L. 1, 1 (1985). This is especially so in cases where a defendant is charged with kidnapping and another crime against the person of another because "[v]irtually every assault, sexual assault, robbery, and murder involves a slight degree of confinement or movement." Karen Bartlett, *Hines 57: The Catchall Case to the Texas Kidnapping Statute*, 35 St. Mary's L.J. 397, 401 (2004); *see Corneau*, 109 N.M. at 86, 781 P.2d at 1164 ("Ordinarily, almost any act of CSP will involve a restraint or confinement[.]").

**{24}** The drafters of the Model Penal Code (MPC) reacted to the broad coverage of these statutes "by drafting a kidnapping provision which was itself limited to conduct of a most

serious nature" that "has had considerable influence upon subsequent legislative action in this area." LaFave, *supra*, § 18.1(a), at 5 (including New Mexico among states on which the MPC has had an influence). The MPC provision was necessary "to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to serious injustice." Model Penal Code § 212.1, cmt. 1, at 13 (Tentative Draft No. 11, 1960). In the most egregious cases, "[t]he criminologically non-significant circumstance that the victim was detained or moved incident to the crime determines whether the offender lives or dies." *Id.* at 14. The MPC's solution was "to define an aggravated offense of kidnapping which shall consist of removal or confinement involving substantial isolation of the victim where the duration of the isolation, the intention of the kidnapper, or other circumstance, makes the behavior specially terrifying and dangerous." *Id.* at 15. Thus, the MPC kidnapping provision focuses on limiting kidnapping to crimes in which the restraint or movement results in a high risk of harm to the victim. LaFave, *supra*, § 18.1(a), at 5. The MPC kidnapping provision reads:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
>
> (a)  to hold for ransom or reward, or as a shield or hostage; or
>
> (b)  to facilitate commission of any felony or flight thereafter; or
>
> (c)  to inflict bodily injury on or to terrorize the victim or another; or
>
> (d)  to interfere with the performance of any governmental or political function.

Model Penal Code § 212.1 (1962). Although New Mexico has not adopted the MPC's version wholesale, our statute shares some key features with the MPC.

**{25}**  New Mexico's statute evolved in the context of these developments in kidnapping jurisprudence. Our kidnapping statute dates to 1913. *See* NMSA 1953, § 40-25-2 (Vol. 6, 1954); 1913 N.M. Laws, ch. 41, § 2. In the early days, three different statutes addressed three types of kidnapping: kidnapping (1) of a child under twelve, NMSA 1953, § 40-25-1 (Vol. 6); (2) for ransom, NMSA 1953, § 40-25-3 (Vol. 6); and (3) "with intent to cause [the victim] to be sent or taken out of this state, or to be secretly confined within the same against his will." Section 40-25-2. The latter crime did not require a specific intent. *See id.*

**{26}**  In 1963, these statutes were repealed in favor of a new construction that substantially reformulated the law of kidnapping and formed the basis of the current law. *See* NMSA 1953, § 40A-4-1 (Vol. 6, Repl., 1964); 1963 N.M. Laws, ch. 303, § 4-1). This amendment was consistent with the national trend toward creation of a single kidnapping statute and a separate statute addressing restraints that do not rise to the level of kidnapping. *See* LaFave,

9

*supra*, § 18.1(a), at 5. The 1963 law created three crimes: (1) kidnapping, (2) criminal use of ransom, and (3) false imprisonment. *See* § 40A-4-1; NMSA 1953, § 40A-4-2 (Vol. 6, Repl., 1964); NMSA 1953, § 40A-4-3 (Vol. 6, Repl., 1964). Through this reformulation, the Legislature created a system with gradated punishments depending on the severity of the crime. *See* §§ 40A-4-1 to -3. The criminal use of ransom and false imprisonment statutes have remained unchanged since 1963. *See* NMSA 1978, §§ 30-4-2, -3 (1963). False imprisonment is the "intentional[] confining or restraining another person without his consent and with knowledge that [the kidnapper] has no lawful authority to do so." Section 30-4-3. This definition of false imprisonment is very similar to the MPC definition in that it requires knowledge that there is no lawful authority for the restraint, but it does not require any specific intent. *See* Model Penal Code § 212.3 (2001); LaFave, *supra*, § 18.3(b), at 40. In New Mexico, false imprisonment is a fourth degree felony, although the MPC and the majority of other states classify it as a misdemeanor. *See* § 30-4-3; Model Penal Code § 212.3; LaFave, *supra*, § 18.3(b), at 41. Criminal use of ransom, punishable as a third degree felony, allows punishment for "knowingly receiving, possessing, concealing[,] or disposing of any portion of money or other property which has at any time been delivered for the ransom of a kidnap[p]ed person." Section 30-4-2.

**{27}** The 1963 amendment also consolidated what had been three types of kidnapping into one. In contrast to false imprisonment, the kidnapping statute required specific intent by the kidnapper to confine the victim against his will or to hold the victim for ransom, as a hostage, or for service against his will. *See* § 40A-4-1; *Clark II*, 80 N.M. at 343, 455 P.2d at 847 ("Merely to confine or restrain against a person's will without the requisite intention is not kidnapping."). The 1963 kidnapping law redefined the prohibited acts as "the unlawful taking, restraining[,] or confining of a person, by force or deception." Section 40A-4-1. In addition, it made kidnapping a capital felony, unless "the jury so specifies[,]" or when the victim was "freed without having had great bodily harm inflicted upon him by his captor" or, in a bench trial, the court believes "the death penalty is not warranted." *Id.*

**{28}** In 1973, the penalty for kidnapping was reduced from a capital offense to a first degree felony, and the intent requirements were rephrased into three categories such that the kidnapper must intend "that the victim: (1) be held for ransom; (2) as a hostage, confined against his will; or (3) be held to service against the victim's will." 1973 N.M. Laws, ch. 109, § 1(A). The 1995 amendments broadened the definition of prohibited conduct slightly to include transporting victims through the use of intimidation in addition to force or deception, but also limited the statute's application by adding a fourth intent requirement: "to inflict death, physical injury[,] a sexual offense on the victim." 1995 N.M. Laws, ch. 84, § 1(A)(4). The 2003 amendment reflects further recognition of the interplay between kidnapping and sexual assault. This amendment allows reduction to a second degree felony only when the victim is voluntarily released "in a safe place and [the kidnapper] does not inflict physical injury *or a sexual offense* upon the victim." 2004 N.M. Laws (1st S.S.), ch. 1, § 2(B) (emphasis added). The current statute reads:

> A.    Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation[,] deception, with intent:
>
> (1)    that the victim be held for ransom;

(2)     that the victim be held as a hostage or shield and confined against his will;

(3)     that the victim be held to service against the victim's will; or

(4)     to inflict death, physical injury[,] a sexual offense on the victim.

B.     Whoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim.

Section 30-4-1.

**{29}**     This review of the kidnapping statute yields several observations.  Our kidnapping statute has never limited kidnapping to cases in which the victim is moved.  Rather, throughout its history the Legislature has maintained the word "confined."  This indicates that the Legislature intended to broaden the statute's application beyond the common law crime of kidnapping.  *See* LaFave, *supra*, § 18.1(a), at 4.  The amendments to the statute, however, reflect a trend toward greater specificity in the elements of kidnapping, demonstrated by the distinction between kidnapping and false imprisonment in 1963 and the addition of intent requirements in that and subsequent amendments.  Even though the prohibited acts remain broadly defined, the evolution of the intent requirements has the effect of limiting the conduct that falls within the statute.  Finally, the gradated system of penalties indicates that the Legislature recognized the special harm caused by movement or isolation of a victim with the specified intent and sought to distinguish it from restraint without that intent.  *See* Model Penal Code § 212.1, cmt. 3 (Tentative Draft No. 11, 1960).

**{30}**     The current graded penalties indicate that the Legislature considers kidnapping a serious crime that requires severe consequences.  First degree kidnapping carries a sentence of eighteen years.  *See* § 30-4-1(B); NMSA 1978, § 31-18-15(A)(3) (2007).  Even second degree kidnapping carries a relatively high sentence—nine years.  *See* § 30-4-1(B); § 31-18-15(A)(6).  In contrast, false imprisonment carries a sentence of eighteen months.  *See* § 30-4-3; § 31-18-15(A)(10).  Furthermore, battery, a crime in which restraint of a victim is often inherent, is a misdemeanor.  *See* NMSA 1978, § 30-3-4 (1963).  Even aggravated battery is only a third degree felony with a sentence of three years.  *See* NMSA 1978, § 30-3-5 (1969); § 31-18-15(A)(9).

### 3.     The Majority Position

**{31}**     With this history in mind, we turn to an examination of cases in other jurisdictions. "The majority view is that kidnapping statutes do not apply to unlawful confinements or movements 'incidental' to the commission of other felonies."  Frank J. Wozniak, Ann., *Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping*, 39 A.L.R. 5th 283, § 2[a] (1996); *see* LaFave,

*supra*, § 18.1(b), (c), at 10-11, 18 (stating that in statutes that include the word "confine" without definition, "[s]ome courts adhere to the minority position that the absence of any such qualifying words . . . means that a kidnapping conviction may be had even though the confinement was very brief and closely connected to commission of the underlying offense"); *State v. Salamon*, 949 A.2d 1092, 1119 (Conn. 2008) (listing jurisdictions following the majority and minority positions).

**{32}**    Those following the majority have developed three tests for whether a restraint or movement is "incidental" to other crimes. Laura Hunter Dietz, 1 Am. Jur. 2d *Abduction & Kidnapping* § 10 (2012). Under the first test, the court must determine "whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution." *Id.*; *see, e.g.*, *Salamon*, 949 A.2d at 1121 (explaining the "various relevant factors" to be considered by the jury). In contrast, the second test focuses on "whether the detention or movement substantially increased the risk of harm over and above that necessarily present in the accompanying felony." Dietz, *supra*; *see, e.g.*, *People v. Daniels*, 459 P.2d 225, 238 (Cal. 1969) (in bank) (explaining the exclusion of "the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself"). The third test applies when the restraint or movement was done to "facilitate the commission of another crime," an element in some states' statutes. Dietz, *supra*; *see, e.g.*, Kan. Stat. Ann. § 21-5408(a)(2) (2011). It requires that the restraint or movement not "be slight, inconsequential, and merely incidental to the other crime" or "be the kind inherent in the nature of the other crime." Dietz, *supra*. Finally, under this test, the restraint or movement "must have some significance independent of the other crime, in that it makes the other crime substantially easier to commit or substantially lessens the risk of detection." Dietz*, supra*; *see, e.g.*, *State v. Buggs*, 547 P.2d 720, 723 (Kan. 1976). *Salamon*, *Daniels*, and *Buggs* illustrate the development of the majority view and these tests.

**{33}**    In *Salamon*, the victim was walking up a flight of stairs when the defendant "grabbed her by the back of the neck[,]" causing the victim to fall down. 949 A.2d at 1101, 1121. The defendant held her down while the victim struggled. *See id.* at 1121. "[W]hen she persisted in screaming and fighting to extricate herself, he punched her once in the mouth and attempted to thrust his fingers down her throat." *Id.* The victim was held on the ground for "at least five minutes." *Id.* The defendant argued, like Defendant here, "that the legislature did not intend for the enhanced penalties available upon convictions of kidnapping to apply when the restraint involved in the kidnapping is incidental to the commission of another crime or crimes." *Id.* at 1102-03 (footnote omitted). The Connecticut court agreed. *Id.* at 1117.

**{34}**    After reviewing the history of kidnapping legislation nationwide and the trends discussed above, the court concluded:

> Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping

12

and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim.

*Id.* The test for whether the restraint was "incidental" is whether "a defendant [intended] to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *Id.* This test presents a factual question. *Id.* at 1121. Thus, "when the evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury." *Id.* at 1120-21; *accord State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012) (agreeing with the *Salamon* court that the question of whether restraint or movement is incidental to another crime must be determined by a properly instructed jury).

{35}  Ultimately, the court reversed the kidnapping conviction and remanded for a new trial in which the jury would "be instructed that, if it finds that the defendant's restraint of the victim was merely incidental to the defendant's commission of another crime against the victim," it could not convict for kidnapping. *Salamon*, 949 A.2d at 1122. This holding was required because, based on the facts of the case, a reasonable juror could find that the restraint was not incidental to the assault. *See id.* at 1122 n.34. The court distinguished the *Salamon* facts from *State v. Sanseverino*, 949 A.2d 1156 (2008), which it decided the same day using the principles outlined in *Salamon*. *Salamon*, 949 A.2d at 1122 n.34. In that case, the defendant followed a woman into a back room of a bakery, "pushed her against the wall," and sexually assaulted her. *Sanseverino*, 949 A.2d at 1161. He then let her go. *Id.* Having determined "that, because no reasonable juror could find that the restraint [the defendant] had imposed on [the victim] was not incidental to the commission of the sexual assault against [the victim]," the court determined that the defendant should be acquitted of kidnapping. *Salamon*, 949 A.2d at 1122 n.34.

{36}  The second test developed out of a case in which two defendants entered the victims' homes under pretext then forced them to move from room to room within the home in order to rob and rape them. *See Daniels*, 459 P.2d at 227-28. The question before the court was whether such movement was within the prohibitions of the California kidnapping statute. *See id.* at 229, 234. The court noted that earlier cases setting forth the rule that "[i]t is the fact, not the distance, of forcible removal which constitutes kidnap[p]ing in this state" had already been overruled in favor of a rule that "[w]here the movement is [i]ncidental to the alleged assault, [the statute] should not have application, as the [l]egislature could not reasonably have intended that such [i]ncidental movement be a taking from one part of the county to another" because "[s]uch a holding could result in a rule that every assault could also be prosecuted for kidnapping under [the statute], as long as the slightest movement was involved." *Id.* at 229, 231-32 (internal quotation marks and citations omitted). Essentially, California had already adopted the first test to exclude restraint or movement incidental to the other crime. In *Daniels*, the court reiterated that exclusion and grafted onto it another—"those . . . movements of the victim . . . [that] do not substantially increase the risk of harm over and above that necessarily present in the [other] crime" itself. *Id.* at 238; *see* Diamond, *supra,* at 5-15. The addition of the second prong—increased risk of harm—addresses the fact that some restraints or movements of victims "reac[h] a form of

13

terrifying and dangerous aggression not otherwise adequately punished." Model Penal Code § 212.1, cmt. 1; *see* Comment, Room-to-Room Movement: *A Risk Rationale for Aggravated Kidna[p]ping*, 11 Stan. L. Rev. 554, 555 (1959) (cited in *Daniels*, 459 P.2d at 238). Under this test, the court held "that the brief movements which [the] defendants . . . compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present." *Daniels*, 459 P.2d at 238. Thus, they did not constitute kidnapping, and the convictions were vacated. *Id.*

**{37}** In *Buggs*, 547 P.2d at 732, the Supreme Court of Kansas adopted the third test. Diamond, *supra*, at 24-27. The statute in that state included as a mens rea element the intent "[t]o facilitate flight or the commission of any crime." *Buggs*, 547 P.2d at 729 (internal quotation marks and citation omitted). While acknowledging that the "statute . . . requir[es] no particular distance of removal, nor any particular time or place of confinement[,]" and "it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping[,]" the court went on to analyze the differences between the first and third tests. *Id.* at 730-31. The *Buggs* court stated, "a kidnapping statute is not reasonably intended to cover movements and confinements which are slight and 'merely incidental' to the commission of an underlying lesser crime." *Id.* at 730. In contrast, when the charge rests on whether the restraint or movement "facilitated" another crime, the court found the "merely incidental" test insufficient because facilitation requires "some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection." *Id.* Therefore, they could not "agree that merely because a taking 'facilitates' another crime it must necessarily be 'merely incidental' to the other crime. Whether a taking substantially 'facilitates' another crime or whether it is 'merely incidental' are two different things. The same taking cannot be both." *Id.* at 731. Therefore, the *Buggs* court developed a test specific to instances in which that aspect of the statute applied, to wit: in addition to being more than incidental to the other crime, the restraint or movement cannot be "of the kind inherent in the nature of the other crime" and "[m]ust have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." *Id.* at 723. As examples, the court stated:

> A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.

*Id.* at 731.

**{38}** The basic question to which each of these tests is directed is whether the restraint or movement increases the culpability of the defendant over and above his culpability for the other crime. *See* Note, *A Rationale of the Law of Kidnapping*, 53 Colum. L. Rev. 540, 557 (1953); *State v. Niemeyer*, 782 A.2d 658, 670 (Conn. 2001) (McDonald, C.J., concurring) ("[T]he guiding principle is whether the restraint was so much the part of another substantive

14

crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." (internal quotation marks and citation omitted)). In 1953, the Columbia Law Review wrote that the harm addressed by kidnapping statutes is the additional danger to the victim by transportation or confinement.

> A salient consideration is that virtually all conduct within the scope of kidnapping law is punishable under some other criminal provision: e.g., extortion, homicide, assault, rape, robbery, statutory rape, contributing to the delinquency of a minor, sex perversion and compulsory prostitution. Consequently, the practical effect of kidnapping law is to permit the imposition of additional sanctions when one of these other crimes is accompanied by a detention and asportation. Kidnapping law, therefore, is defensible only if an asportation or detention significantly increases the dangerousness or undesirability of the defendant's behavior.

*A Rationale of the Law of Kidnapping*, *supra*, at 556. In other words, the severe penalties for kidnapping are acceptable only when there is culpability for increased danger to the victim. *See Vernon*, 116 N.M. at 741, 867 P.2d at 411 (citing with approval *People v. Wesley*, 365 N.W.2d 692, 710 (Mich. 1984) (Levin, J., dissenting), in which the dissent states that to elevate second degree murder to first degree based on movement of the victim "aggravates the degree of the offense where there is no additional culpability").

### 4.      The Legislature Did Not Intend to Punish Defendant's Conduct as Kidnapping

{39}    We conclude from this examination of the purpose and interpretation of our and other states' kidnapping statutes that the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime. While we find the *Salamon*, *Daniels*, and *Buggs* tests for determining just what conduct is "incidental" to another crime informative, it is unnecessary to adopt a specific test to resolve the issue here because Defendant's conduct fails to constitute kidnapping under *any* of these tests. The facts here do not present a "close call." Applying the *Salamon* test, it is clear that the restraint was not longer or greater than that necessary to achieve a battery—in fact, the restraint occurred within the period of the battery, in the same general location, and there was no indication that Defendant intended any other purpose than to continue battering Victim. In addition, under the *Daniels* test, the brief restraint did not subject Victim to substantially greater risk of harm. This was a struggle between two people to gain the upper hand—although Defendant held Victim and called to his co-conspirator to hit Victim, Defendant always intended that the two of them would beat Victim, so the restraint was not an effort to increase the harm to Victim. Furthermore, the restraint did not increase the length or severity of the attack because their intent to batter him existed throughout the episode and was not changed by the restraint. In addition, the entire episode began and ended within a relatively short period. Finally, to the extent that the State argues that Defendant's restraint was intended to facilitate a battery by his co-conspirator, and thus fits within the *Buggs* test, this argument is untenable both because our statute is unlike Kansas' statute and because the facts do not support it.

**{40}** Since the State does not dispute the proximity in location and time, the State relies instead on intent to distinguish the kidnapping from the battery. *See Clark II*, 80 N.M. at 343, 455 P.2d at 847 ("Merely to confine or restrain against a person's will without the requisite intention is not kidnapping."). Essentially, the State asks us to conclude that Defendant completed a battery upon Victim and then formed a separate intent to restrain Victim (who was in fact on top of Defendant at this point) in order to facilitate a separate battery upon Victim by the other assailant. We find this argument without merit. In convicting Defendant of conspiracy to commit aggravated battery, the jury found that Defendant and the other assailant "agreed together to commit [a]ggravated [b]attery." Thus, Defendant's intent was unchanging throughout the encounter—he intended, along with his co-conspirator, to batter Victim. The request for help does not reflect a sudden change in intent from battery to kidnapping; it reflects that Defendant had always intended that the fight would be two against one. Similarly, the restraint also does not reflect a sudden change in Defendant's intent, but rather a prudent defensive measure Defendant adopted when the battery began to go awry.

**{41}** Finally, we note that, in this case, a conviction for kidnapping would increase Defendant's sentence three fold—from three to nine years—because he held Victim for a short time during a fight. (Although Victim was not released without physical injury so as to meet the definition of second degree kidnapping, Defendant was nevertheless charged and sentenced as if this was a second degree kidnapping instead of first degree.) The Legislature could not have intended this result. *See State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981) (concluding that the "substantial disparity between sentences" for kidnapping and sexual abuse indicated that "the legislature intended the kidnapping statute to be applicable only to those situations in which confinement or removal definitely exceeds that which is merely incidental to the commission of sexual abuse"). The kidnapping conviction must be overturned.

**{42}** We emphasize that the factual circumstances of this case have allowed us to determine as a matter of law that the Legislature did not intend Defendant's conduct to constitute kidnapping. Obviously not all cases will be so clear. As always, facts matter. Here, for example, if the Victim had been restrained and under restraint moved outside his home, we would have a more complicated and closer question. A more complicated factual scenario would present a jury question—submitted under appropriate instructions—as to whether the restraint involved was merely incidental to the other crime.

**{43}** Finally, our holding today does not conflict with *Clark I*, in which this Court held that the duration of confinement or distance of movement is immaterial to a kidnapping charge, nor does it preclude conviction for kidnapping based on minimal movement or short confinement. *See* 80 N.M. at 94, 451 P.2d at 998. This is because our holding does not depend only on the amount of time Defendant held Victim. "[I]ncidental movement is not solely a matter of measuring feet and inches." *State v. Green*, 616 P.2d 628, 635 (1980) (en banc). Rather, whether the restraint or movement is incidental depends on "the facts of each case, in light of the totality of surrounding circumstances. This characterization is as much a consideration of the relation between the restraint and the [other crime] as it is a measure of the precise distance moved or place held." *Id.*

16

**{44}** Because we reverse the kidnapping conviction, there is no need to address Defendant's double jeopardy arguments regarding kidnapping.

## B.     Double Jeopardy and the Conspiracy Convictions

**{45}** Defendant was convicted of two conspiracies: conspiracy to commit aggravated burglary and conspiracy to commit aggravated battery. He argues that this violated his double jeopardy rights. The State concedes that there was evidence of only one conspiracy to commit multiple crimes. Although we are not bound by this concession, we agree.

**{46}** In *State v. Gallegos*, our Supreme Court held that New Mexico's conspiracy statute carries "a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one . . . punishment set at the highest crime conspired to be committed." 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655. The Court identified a number of factors that might overcome this presumption, including where the conspiracies occurred, overlap in when the conspiracies occurred, overlap in who conspired, and whether the acts charged and the role played by the defendant in the alleged conspiracies were similar. *Id.* ¶ 42. As the State explains,

> [G]uilty verdicts on both conspiracy charges required the jury to find that both conspiracies took place at the same time and place between Defendant and another person. There is no indication that the "other person" of each instruction was not the same person. The objects of both conspiracies were inseparable, as the aggravated burglary was done with intent to commit the aggravated battery. Defendant's roles in each charged conspiracy were likewise inseparable, being part of one concerted action. . . . The presumption that there was but a single conspiracy is not overcome.

This analysis is correct. On remand the district court is instructed to vacate Defendant's conviction of the lesser conspiracy, conspiracy to commit aggravated battery.

## C.     Ineffective Assistance

**{47}** Defendant argues that his attorney's failure to subpoena critical witnesses was ineffective assistance requiring a new trial. "To state a case of ineffective assistance of counsel, [d]efendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Garcia v. State*, 2010-NMSC-023, ¶ 30, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted). With respect to the first prong, "[a]n appellate court will not second-guess counsel's strategic judgment unless the conduct does not conform with an objective standard of reasonableness." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *State v. Orosco*, 113 N.M. 789, 797, 833 P.2d 1155, 1163 (Ct. App. 1991). "We review claims of ineffective assistance of counsel de novo." *Garcia*, 2011-NMSC-003, ¶ 33.

17

**{48}** Whether we will address an ineffective assistance claim on direct appeal depends on the completeness of the record. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. In the instant case, trial counsel moved for a new trial. The motion was based in part on the argument that he had been ineffective. This motion provides sufficient information upon which to decide the issue.

**{49}** In the motion for a new trial, counsel states that one reason that he did not object "that Defendant might not get a fair trial without the crucial testimony of both [o]fficers" was that he "did not believe that Defendant could possibly be convicted in spite of the absence of the [o]fficers." This admission by itself is fatal to his claim that his assistance was ineffective. The assertion simultaneously admits that counsel made an informed decision not to take further steps to try to secure the testimony of the officers and admits that counsel did not believe that the officers' testimony would have made a difference in this case. We accept as true counsel's statement that he made a tactical decision not to pursue the officers' testimony and conclude that his assistance was not ineffective.

### D. Officer Testimony

**{50}** Defendant argues that the district court abused its discretion by excluding testimony or recordings from officers responding to the 911 call to the effect that damage done to Victim's back door had occurred prior to the night of the break-in. Even assuming that the exclusion of this evidence was error, we conclude that any error was harmless.

**{51}** When a district court makes an evidentiary error not implicating a defendant's constitutional rights, "we employ the non-constitutional standard for the harmless error analysis." *State v. Branch*, 2010-NMSC-042, ¶ 15, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. An error is harmful when, looking at the totality of the circumstances, there is a "reasonable . . . probability[] that impermissible evidence contributed to a defendant's conviction." *Tollardo*, 2012-NMSC-008, ¶ 43; *see State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 (explaining that constitutional errors are reviewed under the "reasonable possibility" standard and non-constitutional errors are reviewed under the less stringent "reasonable probability" standard), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37.

**{52}** Looking at the totality of the circumstances in this case, there is no reasonable probability that the exclusion of officer statements that the damage to the door was pre-existing contributed to Defendant's convictions. Defendant's aggravated battery conviction was supported by the testimony of Victim, Victim's wife, and Victim's child. Additionally, the aggravated burglary conviction, which required that Defendant enter Victim's house armed and with the intent to commit the battery, was supported by the same testimony. Evidence regarding the door was not in any way relevant to the elements of these crimes. In addition, a picture of the door was admitted into evidence from which the jury could draw its own conclusions. Under these circumstances, we cannot conclude that there is a

18

reasonable probability that the result was affected by the exclusion of this evidence.

## E.      Exclusion of Questions About Drug Use and Sales

**{53}**      Defendant also contends that the district court abused its discretion by ruling that Defendant could not attempt to elicit information about Victim's involvement with drugs, either as a user or a seller.  The district court excluded this under Rule 11-404(A) NMRA as unfairly prejudicial.  Defendant's theory appears to be that such evidence would have tended to prove that Victim had a motive to steal, and in particular, to frame Defendant in order to fraudulently file suit against him in order to obtain a money judgment.

**{54}**      We review the decision to exclude evidence for abuse of discretion.  *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232.  "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case."  *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.  Defendant proffered testimony that Victim and his wife once had a methamphetamine problem and that Defendant had recently seen numerous cars making short stops at Victim's house.  He desired to introduce this to show that Victim was using or selling drugs and that, therefore, he was untruthful and likely to initiate fraudulent civil lawsuits.  But the probative value of this evidence, if any, is far outweighed by the prejudice to Victim of being portrayed as a drug user or drug dealer.  *See State v. Rael*, 117 N.M. 539, 542-43, 873 P.2d 285, 288-89 (Ct. App. 1994) (holding that evidence that a defendant sold drugs was unduly prejudicial when the defendant was charged only with being a felon in possession of a firearm).  Here, Defendant's theory, not the district court's ruling, is contrary to logical conclusions demanded by the facts of the case; therefore, we cannot say that the district court abused its discretion in excluding this evidence.

## F.      Motion to Disqualify Seventh Judicial District Attorney's Office

**{55}**      Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), Defendant argues that a new trial is warranted based on the district court's erroneous denial of his motion to recuse the prosecutor and the entire Seventh Judicial District Attorney's Office.  When reviewing motions to disqualify, we must decide whether legal or factual questions are at issue.  *State v. Juan*, 2010-NMSC-041, ¶ 31, 148 N.M. 747, 242 P.3d 314.  We review legal issues de novo, but defer to the district court's judgment when factual questions are involved.  *Id.*

**{56}**      In order to disqualify a prosecutor, Defendant must make "a showing of particular circumstances that justifies an inference of a disqualifying interest."  *State v. Gonzales*, 2005-NMSC-025, ¶ 34, 138 N.M. 271, 119 P.3d 151.  Bias is one such disqualifying interest.  *See id.* ¶ 39.  "The personal bias that is disqualifying, however, is a bias that creates an opportunity for conflict or other improper influence on professional judgment.  There must be a basis in fact for a determination such bias exists."  *Id.*

**{57}**      "[A] defendant's conduct will almost never be sufficient to disqualify a member of the prosecution team, unless the crime being prosecuted was committed against the

19

prosecuting attorney or someone else involved in the prosecution." *Id.* ¶ 29. For example, in *State v. Robinson*, this Court found no disqualifying interest preventing an assistant district attorney from prosecuting a defendant for CSP when that defendant had later solicited the murder of that attorney. 2008-NMCA-036, ¶ 25, 143 N.M. 646, 179 P.3d 1254.

**{58}** Defendant's motion was heard on December 15, 2009. Defendant did not introduce any evidence, but counsel asserted that Defendant's wife had written letters to the disciplinary board and to the prosecutor's supervisor, and that the prosecutor had initiated a federal investigation into Defendant's wife for stalking. The district court denied the motion, comparing it to a case where a judge was not disqualified from hearing the case of a defendant who had made death threats against the judge. Defendant has not made a factual record for his motion; however, assuming his assertions are true, we conclude as a matter of law that *Robinson* required that his motion be denied. In *Robinson*, a defendant's death threats against a prosecutor were insufficient to disqualify the prosecutor. *Id.* Here, Defendant's wife allegedly wrote two letters and possibly made herself the target of a separate stalking prosecution. Even assuming any of this is true, and assuming that Defendant's wife's actions can be imputed to Defendant, we conclude that these actions fall far below the facts that were not disqualifying in *Robinson*.

## G.     Cumulative Error

**{59}** Finally, Defendant asserts without explanation that the cumulative impact of non-reversible irregularities is so prejudicial that he was deprived of his right to a fair trial. We disagree. The cumulative error doctrine is strictly applied and may not be successfully invoked if the record as a whole demonstrates that a defendant received a fair trial. *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814. "Because we have vacated all convictions for which we found error, and there is otherwise no error to accumulate, we conclude that the defendant received a fair trial and that the doctrine is not applicable in this case." *Id.*

## III.     CONCLUSION

**{60}** For the foregoing reasons, we affirm all of Defendant's convictions except for the kidnapping and conspiracy to commit aggravated battery convictions. On remand, the district court is instructed to vacate these convictions.

**{61}     IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

20

_____

**LINDA M. VANZI, Judge**

**Topic Index for** *State v. Trujillo*, **No. 30,563**

**APPEAL AND ERROR**
Cumulative Error
Harmless Error
Remand
Standard of Review

**ATTORNEYS**
Effective Assistance of Counsel


**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Burglary
Conspiracy
Kidnaping

**CRIMINAL PROCEDURE**
Double Jeopardy
Lesser Included Offense

**EVIDENCE**
Exclusion of Evidence

**STATUTES**
Interpretation
Legislative Intent