This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                             **NO. 32,643**

**JEREMIAH IRVIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Samuel L. Winder, District Judge**

Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Defendant Jeremiah Irvin appeals his convictions for two counts of kidnapping, one count each of conspiracy to commit kidnapping, robbery, and unlawful taking of

a motor vehicle. Defendant argues that (1) the conduct constituting kidnapping was incidental to the robbery; (2) the State presented insufficient evidence to support his convictions; (3) the robbery and kidnapping convictions violate the prohibition against double jeopardy; (4) the district court erred in its serious violent offense determination under the earned meritorious deductions statute (EMD), NMSA 1978, § 33-2-34 (2006).

{2}    We hold that the restraint involved in this case was incidental to the robbery as a matter of law and is not punishable as kidnapping. As a result, we reverse the kidnapping and conspiracy to commit kidnapping convictions. Because we reverse the kidnapping convictions, we need not address Defendant's double jeopardy argument. It is also unnecessary to address Defendant's arguments regarding the jury instruction for kidnapping and the district court's classification of kidnapping as a serious violent offense.  We further hold that the district court's findings are insufficient to support its serious violent offense determination under the EMD. We reverse this designation and remand for sentencing in accordance with EMD. We affirm all other convictions.

**BACKGROUND**

{3}    On September 28, 2011, Defendant, Joshua Saavedra, and an unidentified man went to the hotel room of Brandon Bates and Bryanna Sawyer.Defendant and Saavedra were casual acquaintances of Bates and had been to the hotel room the

previous week. Defendant and Saavedra asked Bates for heroin, and Bates gave them a small amount. Defendant and Saavedra went to the bathroom area while another unidentified man sat on the bed. Saavedra called Bates over to the bathroom area. Defendant punched Bates, grabbed him in a headlock, and pushed him to the floor. Bates ended up on his knees. Defendant demanded that Bates tell Saavedra where Bates had his money. Defendant had one hand on Bates' shoulder and one arm cocked back like he was going to hit him again.

{4}     Sawyer was sitting on the bed, and the unidentified man held a knife to her throat. While Sawyer and Bates were restrained, Saavedra collected money from Bates' pants pockets, drugs, Sawyer's purse, a car speaker, and Bates' car keys. The men ran out of the room and fled in Bates' vehicle. When the men left, Bates and Sawyer tried to call the police from the phone in their room and noticed that the cord connecting the receiver to the phone was missing. They went to the office of the hotel, where Bates called the police.

{5}     Detective Geoffrey Stone of the Albuquerque Police Department responded to the robbery call and took statements from Bates and Sawyer. Detective Stone also viewed hotel surveillance video that showed three men entering the victims' hotel room and leaving a short time later with items that they did not have when they went in. The video showed the men getting into Bates' vehicle and leaving the hotel parking

lot. Detective Stone was able to identify Saavedra. He and other police officers went to the apartment complex where Saavedra lived. Bates' car was in the parking lot. Defendant was standing in the open doorway of Saavedra's apartment. Detective Stone testified that Defendant was wearing the "exact same clothing" that he had seen on one of the subjects in the hotel surveillance video.

{6}     Defendant was taken into custody and charged with the armed robbery of Bates and Sawyer (Counts 1 and 3), conspiracy to commit the robberies (Counts 2 and 4), the kidnapping of Bates and Sawyer (Counts 5 and 7), conspiracy to commit the kidnappings (Counts 6 and 8), and unlawful taking of a vehicle (Count 9). Defendant was convicted of robbery for taking Bates' money, a lesser-included offense of armed robbery, as charged in Count 1; the kidnapping of Bates and Sawyer, as charged in Counts 5 and 7; conspiracy to commit Bates' kidnapping, as charged in Count 6; and unlawful taking of a vehicle, as charged in Count 9.

**DISCUSSION**

{7}     Defendant raises several issues related to his kidnapping convictions. He argues that the conduct charged as kidnapping was actually restraint incidental to the robbery, that the convictions violate double jeopardy, that the jury instructions for kidnapping did not accurately reflect the law], and that the district court erred in designating kidnapping as a serious violent offense for purposes of EMD. Because our analysis

4

of the restraint, as incidental to the robbery, is determinative of Defendant's other kidnapping related arguments, we begin our analysis there. We will then address Defendant's remaining arguments.

**I.     Kidnapping**

{8}     We begin our review of Defendant's kidnapping convictions by considering whether Defendant's conduct constitutes kidnapping as a matter of law. *State v. Trujillo*, 2012-NMCA-112, ¶¶ 6, 22, 289 P.3d 238, *cert. quashed*, 2015-NMCERT-003, 346 P.3d 1163. The question of whether the legislative intended restraint under these circumstances to be charged as kidnapping is a question of law that we review de novo. *Id.* ¶ 7 (stating that "[w]hether the Legislature intended restraint during an aggravated battery to be charged as kidnapping is a question of statutory interpretation . . . which we review de novo").

Kidnapping is defined as:

the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent:

(1)     that the victim be held for ransom;

(2)     that the victim be held as a hostage or shield and confined against his will;

(3)     that the victim be held to service against the victim's will; or

(4)     to inflict death, physical injury or a sexual offense on the victim.

NMSA 1978, § 30-4-1 (2003).

**{9}** Defendant was convicted of kidnapping under the third mens rea requirement, that the victim be "held to service against the victim's will." Section 30-4-1(A)(3). Defendant argues that restraint which is incidental to other crimes is not punishable under the "held to service" prong of the kidnapping statute. Defendant also contends that the evidence supporting his kidnapping convictions was insufficient because it failed to establish that the victims were "held to service" as contemplated by the statute.

**{10}** This Court has held that movement or restraint of a victim that is merely incidental to another crime is not separately punishable as kidnapping. *Trujillo*, 2012-NMCA-112 ¶¶ 6-8, 39. The determination of whether conduct is incidental is fact dependent and based on the totality of the circumstances. *Id.* ¶¶ 42-43. One factor we have considered in determining whether restraint or movement of a victim is incidental is "whether a defendant intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *Id.* ¶¶ 34, 39 (alteration, internal quotation marks, and citations omitted). We have also considered whether the movement or restraint subjected the victim to a "risk of harm over and above that necessarily present in the other crime," *id.* ¶ 36 (alteration, internal quotation marks, and citation omitted), and whether the movement

6

or restraint is "of the kind inherent in the nature of the other crime" or whether it has "some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." *Id.* ¶ 37 (internal quotation marks and citation omitted). Although we have not adopted a specific test to determine whether a defendant's conduct is incidental to another crime, the ultimate question is "whether the restraint or movement increases the culpability of the defendant over and above his culpability for the other crime." *Id.* ¶ 38.

{11}     Our review of the record in the present case reveals that Defendant punched Bates and used a headlock to gain physical control of him, and then restrained him while Saavedra looted Bates' room. After Bates was restrained, Defendant did not use additional force against Bates. Sawyer was restrained when the unidentified assailant pointed a knife at her throat and threatened to "shank" her if she moved. Sawyer testified that the unidentified man did not hold her in any other way. Both victims were released before the men left the hotel room. The entire incident lasted approximately two minutes.

{12}     The restraint used in this case was not longer nor was it to a greater degree than necessary to complete the robbery. *See Trujillo,* 2012-NMCA-112, ¶ 39 (stating that the restraint in that case was not longer or greater than that necessary to achieve the

underlying crime, the restraint occurred within the period of the underlying crime in the same general location, and there was no indication that the defendant intended any other purpose than to complete the underlying crime). The restraint did not subject the victims to an increased risk of harm above and beyond that inherent in the underlying crime of robbery. *See id.* (reasoning that the risk of harm to the victim was not increased by the restraint because the restraint was an effort to complete the intended crime, not an effort to increase the harm to the victim, because "the restraint did not increase the length or severity" of the underlying crime, and because the "entire episode began and ended within a relatively short period").

{13}     Moreover, the restraint used against the victims in this case was of the kind inherent in robbery. *See* NMSA 1978, § 30-16-2 (1973) ("Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."). The restraint also had no significance, independent of the robbery, that made the robbery substantially easier to commit or substantially lessened the risk of detection. *See Trujillo*, 2012-NMCA-112, ¶ 37 (noting that "[a] standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of

8

seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is." (internal quotation marks and citation omitted)).

**{14}** We conclude that the restraint of the victims in this case was incidental to the robbery and did not increase Defendant's culpability over and above his culpability for the robbery. We hold that the restraint here, as a matter of law, is not separately punishable under the kidnapping statute, and Defendant's convictions for kidnapping are reversed. We emphasize, as we did in *Trujillo*, that "the factual circumstances of this case have allowed us to determine as a matter of law that the Legislature did not intend Defendant's conduct to constitute kidnapping." 2012-NMCA-112, ¶ 42. If the facts were different or more complicated, it would be for a properly instructed jury to decide "whether the restraint involved was merely incidental to the other crime." *Id.*

**{15}** Because we reverse the kidnapping convictions, there is no need to address Defendant's double jeopardy argument. It is also unnecessary to address Defendant's arguments regarding the jury instruction for kidnapping and the district court's classification of kidnapping as a serious violent offense.

**II.     Sufficiency of the Evidence**

**A.     Standard of Review**

9

**{16}** Reviewing sufficiency of the evidence we must "determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 (internal quotation marks and citation omitted). In doing so, we "view the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

## B. Conspiracy to Commit Kidnapping

**{17}** "The gist of conspiracy under the statute is an agreement between two or more persons to commit a felony." *State v. Gallegos*, 2011-NMSC-027, ¶ 25, 149 N.M. 704, 254 P.3d 655 (internal quotation marks and citation omitted). "In order to be convicted of conspiracy, the defendant must have the requisite intent to agree and the intent to commit the offense that is the object of the conspiracy." *Id.* (internal quotation marks and citation omitted).

**{18}** In the present case, the State had to prove that (1) Defendant and another person by words or acts agreed to commit the kidnapping of Bates, and (2) Defendant and the other person intended to commit the kidnapping of Bates. Even though there was no direct evidence of an agreement to kidnap Bates, "[a] conspiracy may be established

10

by circumstantial evidence, [and] the agreement is a matter of inference from the facts and circumstances. *Gallegos*, 2011-NMSC-027, ¶ 26 (internal quotations marks and citation omitted).

{19} However, the evidence presented to support conspiracy to kidnap is identical to the evidence presented to support the kidnapping convictions. The State argues that a conspiracy to kidnap Bates can be inferred from the testimony related to Defendant's restraint of Bates during the robbery. As we discussed earlier, Defendant's restraint of Bates does not constitute kidnapping as a matter of law. Accordingly, that testimony alone is insufficient to support Defendant's conviction for conspiracy to commit kidnapping.

## C. Accessory Liability for Robbery

{20} At trial, the State presented theories of both principal and accessory liability to the jury. However, the verdict sheets returned by the jury did not specify whether its determinations of Defendant's guilt for robbery and unlawful taking of a motor vehicle were based on principal or accessory liability, though both theories were presented to the jury. Since the verdicts may be upheld where one of the theories for conviction is supported by sufficient evidence, we will address these crimes under the accomplice liability theory. *State v. Bahney*, 2012-NMCA-039, ¶ 26, 274 P.3d 134.

{21} In New Mexico, a person may be "convicted of [a] crime as an accessory if he procures, counsels, [or] aids or abets in its commission[,] although he did not directly commit the crime." NMSA 1978, § 30-1-13 (1972). "A person who aids or abets in the commission of a crime is equally culpable" and faces "the same punishment as a principal." *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075. A defendant may be found guilty of a substantive offense as an accessory, if the jury finds beyond a reasonable doubt that: "[(1) t]he defendant intended that the crime be committed; [(2) t]he crime was committed; and [(3) t]he defendant helped, encouraged[,] or caused the crime to be committed." UJI 14-2822 NMRA. Under an accessory liability theory, "a jury must find a community of purpose for *each* crime of the principal." *Carrasco*, 1997-NMSC-047, ¶ 9. In other words, "a jury must find that a defendant *intended* that the acts necessary for each crime be committed." *Id.*

{22} Defendant maintains that the evidence was insufficient to support his convictions for robbery and unlawful taking of a motor vehicle because the witnesses in this case were unreliable and because there was no physical evidence tying him to the crime. We disagree. According to the victims' testimony, Defendant knocked Bates to the floor, demanded to know where Bates kept his money, restrained Bates during the robbery, and left the hotel as a passenger in Bates' stolen vehicle. Shortly after the robbery, Defendant was present at Saavedra's apartment wearing the "exact

same clothing" that Detective Stone had seen on one of the subjects in the hotel surveillance video. Bates' stolen vehicle was recovered in the parking lot of the same apartment complex.

{23} Even in the absence of any evidence directly connecting Defendant to the crimes, this testimony constitutes sufficient circumstantial evidence to establish that Defendant was helping, encouraging, or causing the robbery and unlawful taking of Bates' vehicle. *See* § 30-16-2 ("Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."); NMSA 1978, § 30-16D-1(A) (2009) ("Unlawful taking of a vehicle or motor vehicle consists of a person taking any vehicle or motor vehicle . . . intentionally and without consent of the owner.").

{24} Moreover, the same evidence is sufficient to establish that Defendant had the requisite intent to commit robbery and unlawful taking of a motor vehicle, which is necessary to convict Defendant as an accessory. *State v. Brenn*, 2005-NMCA-121, ¶ 26, 138 N.M. 451, 121 P.3d 1050 (stating that "an accessory's intent may be established by inference from the surrounding facts and circumstances" and that "intent can be inferred from behavior which encourages the act" (internal quotation marks and citation omitted)). "The evidence is not so thin that we can say as a matter

of law that *no* rational jury could find the required facts to support a conviction." *Id.* (alteration, internal quotation marks, and citation omitted).

### III.    Defendant's Claim of Instructional Error

**{25}**    There were no objections to the instructions as given at trial and, therefore, we review the instructions for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176; *see also State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that when an issue concerning jury instructions has not been preserved, review is for fundamental error). Under the fundamental error analysis, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Stefani*, 2006-NMCA-073, ¶ 22, 139 N.M. 719, 137 P.3d 659 (internal quotation marks and citation omitted). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted).

**{26}**    The unlawful taking of a vehicle statute reads: "[u]nlawful taking of a motor vehicle consists of a person taking any vehicle or motor vehicle . . . intentionally and

14

without consent of the owner." Section 30-16D-1(A). The jury was given an instruction on unlawful taking of a vehicle, which read:

> For you to find [D]efendant guilty of Unlawfully Taking a Vehicle as charged in Count 9, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant took a 1999 Subaru 2-door without the owner's consent;
>
> 2. This happened in New Mexico on or about the 28th day of September[] 2011.

{27} Unlawful taking of a vehicle is a general intent crime. It usually requires that the instruction on general criminal intent, UJI 14-141 NMRA, be given. *See* UJI 14-141 comm. comment. The instruction on general criminal intent states in pertinent part:

> In addition to the other elements of [the target offense], the [S]tate must prove to your satisfaction beyond a reasonable doubt that [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime.

UJI 14-141.

{28} At trial, the general intent instruction was not given. Defendant argues that the failure to give the general intent instruction constituted a failure to instruct the jury on criminal intent, an essential element of unlawful taking of a vehicle. However, in closing, the State argued that Defendant was guilty of unlawfully taking Bates' vehicle

as an accessory or accomplice. The jury received an instruction on accomplice liability, which read:

> [D]efendant may be found guilty of a crime even though he himself did not do the acts constituting the crime, if the [S]tate proves to your satisfaction beyond a reasonable doubt that:
>
> 1.    [D]efendant intended that the crime be committed;
>
> 2.    The crime was committed;
>
> 3.    [D]efendant helped, encouraged or caused the crime to be committed.

{29}    In *State v. Bachicha*, we reversed the defendant's conviction for unlawful taking of a vehicle because the intent instruction given in that case addressed the determination of intent but failed to instruct on the essential element of "conscious wrongdoing." 1972-NMCA-141, ¶ 5, 84 N.M. 397, 503 P.2d 1175 (internal quotation marks omitted). This case is distinguishable. Here, the instructions, when read together, were sufficient to instruct the jury on the elements of unlawful taking of a vehicle as required by the statute, including criminal intent. *See Carrasco*, 1997-NMSC-047, ¶ 7 ("The uniform jury instruction for accessory liability incorporates the intent requirement and correctly states the standard for a finding that a defendant is guilty as an accessory."). We do not believe that a reasonable jury would have been confused or misdirected by the jury instructions given or that failing to give the

16

general criminal intent instruction amounted to a miscarriage of justice that would shock the conscience.

**IV.    Findings Required to Support the District Court's Designation of Robbery as a Serious Violent Offense Under the EMD**

{30}    Defendant contends that the district court's findings were legally insufficient to support its conclusion that the robbery conviction was a serious violent offense under the EMD. We review the district court's designation of a crime as a serious violent offense for an abuse of discretion. *State v. Solano*, 2009-NMCA-098, ¶ 7, 146 N.M. 831, 215 P.3d 769. Because a court abuses its discretion when it acts contrary to law, we review de novo the legal sufficiency of the district court's findings in support of its serious violent offense designation. *Id.*

{31}    Under the EMD, prisoners convicted of serious violent offenses may earn only four days a month of credit against their time in prison for participating in certain programs, while prisoners convicted of nonviolent offenses may earn up to thirty days a month. Section 33-2-34(A)(1), (2). The statute provides a list of offenses that are per se serious violent offenses. Section 33-2-34(L)(4)(a)-(n). The statute also provides a list of offenses that, based on the nature of the offense and the resulting harm, may be categorized as serious violent offenses, at the discretion of the sentencing court. Section 33-2-34(L)(4)(o). Defendant's robbery conviction falls within the discretionary provision of the statute. *See* § 33-2-34(L)(4)(o)(13) (stating that "

17

'serious violent offense' means 'any of the following offenses[;] third degree robbery as provided in Section 30-16-2' ").

{32} In *State v. Morales*, we discussed the legislative intent supporting the EMD. 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747, *abrogated on other grounds by State v. Frawley*, 2007-NMSC-057, ¶ 36, 143 N.M. 7, 172 P.3d 144. We observed that the EMD's list of discretionary offenses includes some offenses that always result in death, indicating that harm resulting from a crime is not the only consideration in determining whether that crime is a serious violent offense. *Morales*, 2002-NMCA-016, ¶ 13. We also noted that many of the discretionary offenses "are characterized by multiple ways of committing the offense, some intentional and some not, and some utilizing physical force and some not," as opposed to the non-discretionary offenses, which "all involve an intent to do the harm prohibited by the statute, or a specific intent to kill or injure, or knowledge that one's acts are reasonably likely to cause serious harm." *Id.* ¶¶ 14-15. We concluded that categorizing a discretionary offense as a serious violent offense is justified where the district court finds that the offense was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Id.* ¶ 16. We also concluded that, even where support

18

exists in the record that these factors are met, the district court must make the required findings in the first instance. *Id.* ¶ 18.

**{33}** The State argues that we should overturn *Morales* and its progeny because those cases are contrary to various rules of statutory construction. However, the State does not explain how the law has developed or the facts have changed since we decided *Morales*, and even its own argument recognizes that our appellate courts have consistently followed that case. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (recognizing that, before overturning precedent, we must consider "whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine" and "whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification" (internal quotation marks and citation omitted)). We have no basis for overruling *Morales* and decline the State's request to do so.

**{34}** Since *Morales*, our appellate courts have continued to require that district courts make specific findings regarding *both* the nature of the offense and the resulting harm to support a serious violent offense designation. *State v. Loretto*, 2006-NMCA-142, ¶ 14, 140 N.M. 705, 147 P.3d 1138. This requirement serves "to inform the defendant being sentenced of the factual basis on which his good time credit is being substantially reduced, and to permit meaningful and effective appellate review of the

court's designation." *Id.* ¶ 12. Although *Morales* does not require the district court's findings to be expressed in specific language, they must demonstrate how the defendant's acts "amounted to an offense committed in a physically violent manner." *State v. Scurry*, 2007-NMCA-064, ¶ 6, 141 N.M. 591, 158 P.3d 1034 (internal quotation marks and citation omitted).

{35}    Here, the district court made factual findings as to why the robbery constituted a serious violent offense. At sentencing the following exchange took place between the district court and counsel:

| The Court: | All right. Robbery is set forth as a serious violent offense . . . so I'll find that. |
| Prosecutor: | It is an option. |
| Defense Counsel: | It is an option, Your Honor. You do have discretion. |
| The Court: | I know that; I know that. And I do take judicial notice of the fact that the jury did not convict your client of armed robbery; but I'll find that robbery . . . is a serious violent offense. |

{36}    Because the parties do not dispute that the robbery was a discretionary offense under Section 33-2-34(L)(4)(o), we conclude that the district court's failure to make findings regarding the nature of the offense or the resulting harm requires remand under *Morales*.

**CONCLUSION**

20

{37} For the foregoing reasons we reverse the convictions for kidnapping and conspiracy to commit kidnapping. We reverse the designation of the robbery conviction as a serious violent offense and remand for additional fact finding. The remainder of the judgment and sentence is affirmed.

{38} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**RODERICK T. KENNEDY, Judge**